[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15756

_____

D.C. Docket No. 1:12-cr-00043-CG-C-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANK M. HOWARD,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(February 19, 2014)

Before CARNES, Chief Judge, DUBINA, Circuit Judge, and ROSENTHAL,[*]
District Judge.

CARNES, Chief Judge:

_____

[*] Honorable Lee H. Rosenthal, United States District Judge for the Southern District of
Texas, sitting by designation.

This Court has held that a conviction under Alabama's third-degree burglary statute, Ala. Code § 13A-7-7, can qualify as a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1).  See United States v. Rainer, 616 F.3d 1212, 1213 (11th Cir. 2010).  The settled law of that decision has been unsettled by the Supreme Court's recent decision in Descamps v. United States, — U.S. —, 133 S.Ct. 2276 (2013), which requires that we revisit our earlier decision of the issue.

When we decided in Rainer that third-degree burglary convictions in Alabama can qualify as ACCA predicates, we believed that the modified categorical approach could be applied to prior convictions for violating any non-generic statute.  See 616 F.3d at 1215–16.  In Descamps, however, the Supreme Court decided that the modified categorical approach can be applied only when the non-generic statute is also a "divisible" statute, which is one that "sets out one or more elements of the offense in the alternative."  Descamps, 133 S.Ct. at 2281–82.  The appellant, Frank Howard, contends that Alabama's third-degree burglary statute is non-generic and indivisible, which would mean that in light of Descamps his convictions under that statute cannot be ACCA predicates.  In the alternative, he argues that the documents the government presented at his sentence hearing did not establish that his third-degree burglary convictions qualify as violent felonies under the ACCA even if the modified categorical approach did apply.  Howard

2

also challenges his current conviction based on the sufficiency of the evidence presented at his trial.

## I.  Facts

Because of Howard's sufficiency challenge, we set out in some detail the facts presented at his trial, construed in the light most favorable to the conviction, see United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007).  On April 28, 2011, the Prichard Police Department received a report from an anonymous caller that a gray Cadillac was parked at a vacant house on Edison Drive.  The caller told the police that the vehicle likely contained guns, drugs, and stolen property.  Four officers responded to the call around 8:00 p.m. and spotted the gray Cadillac backed into the yard of the abandoned house.  The street lamps gave off enough light so that the officers could see three men sitting inside the vehicle — two in the front and one in the back.  The man in the driver's seat was Frank Howard.  The man in the front-passenger seat was Gabriel Cox.

The four officers parked their police cruisers on the street, exited their vehicles, and approached the Cadillac.  As they neared the car, the officers told the three occupants to raise their hands where the officers could see them.  Howard and the backseat passenger immediately raised their hands, but Cox did not.  Instead he leaned down toward his right foot and fumbled with something near the

3

floorboard for a few seconds.  The officers again told Cox to put his hands in the air, and this time he did.

When the officers reached the Cadillac, they smelled marijuana smoke, so they ordered the three occupants to step out of the car.  The officers patted down the three men and found a pistol in the backseat passenger's waistband.  While standing outside the car during the pat downs, Officer Aaron Tucker noticed a blunt (a cigar wrapper in which the tobacco has been replaced with marijuana) and a bag of marijuana on the front-passenger floorboard — the same area Cox had leaned toward moments earlier.  Officer Tucker also saw small plastic bags of marijuana and cocaine sitting on the cushion of Howard's seat.  The officers arrested the backseat passenger for carrying a concealed pistol without a permit, and arrested Howard and Cox for possession of marijuana and cocaine.

The officers ran a database search on the Cadillac's license plate number and found that it belonged to Howard.  Because Howard did not have anyone who could take possession of the car for him, the officers called for a tow truck.  Before the truck arrived, the officers performed an inventory search of the car.  Inside the front-passenger glove compartment they found two things:  a tag receipt showing that Howard was the owner of the car and a .40-caliber Glock model 23 pistol.  The officers ran the pistol's serial number through a national database and learned that it had been reported stolen.

4

## II.  Procedural History

A federal grand jury indicted Howard in March 2012, charging him with one count of being a felon in possession of a firearm.  See 18 U.S.C. § 922(g)(1).  Howard's first trial ended in a hung jury.  At his second trial, the parties stipulated that Howard had been convicted of a felony and that the pistol found in his car's glove compartment had traveled in interstate commerce, so the only issue was whether Howard had possessed the pistol.  The government presented testimony from Officers Aaron Tucker and Walter Knight, two of the officers who had arrested Howard.  Both of them recounted the facts we have already set out, and they also testified that, after the officers had ordered the occupants to put their hands in the air, Cox had reached toward the floorboard, not toward the glove compartment.  Officer Tucker said that he "had an eye on" Cox as the police approached the Cadillac, and that he did not see Cox touch the glove box.  The government introduced into evidence a certified copy of Howard's vehicle registration to prove his ownership of the Cadillac, as well as a certified copy of Howard's 2008 state conviction for carrying a pistol in a vehicle without a license.[1]  Howard did not present any evidence of his own.

---

[1] That conviction was not presented as evidence of Howard's felony status.  Instead, the district court admitted it under Federal Rule of Evidence 404(b) "as evidence of Howard's knowing possession of the Glock in his vehicle on this occasion, some three years later."  Howard does not challenge that ruling in this appeal.

5

At the close of the government's case, Howard moved for a judgment of acquittal, which the district court denied.  The jury convicted him as charged, and the court entered judgment against him.

Howard's presentence investigation report recommended a base offense level of 24 because he had at least two felony convictions for a crime of violence or a controlled substance offense.  See U.S.S.G. § 2K2.1(a)(2)).  It added 2 levels under § 2K2.1(b)(4)(A) for possession of a stolen firearm and 4 levels under § 2K2.1(b)(6)(B) for possession of a firearm in connection with another felony offense.  With those enhancements, Howard's total offense level was 30.  That offense level, combined with his criminal history category of VI, would have given Howard a guidelines range of 168 to 210 months imprisonment.

The PSR concluded, however, that Howard's eight Alabama convictions — seven for third-degree burglary and one for third-degree robbery — qualified him for an armed career criminal enhancement under the ACCA.  The ACCA enhancement carries a 15-year mandatory minimum sentence and an automatic offense level of 33.  See 18 U.S.C. § 924(e)(1); U.S.S.G. § 4B1.4(b)(3)(B).  As a result, Howard's guidelines range was 235 to 293 months imprisonment, with a mandatory minimum of 180 months.

Howard raised several objections to the PSR.  The only one relevant to this appeal is a challenge to the PSR's conclusion that he was an armed career criminal

6

under the ACCA.  First, he argued that the Supreme Court's decision to grant certiorari in Descamps itself showed that the modified categorical approach should not be applied to an indivisible, non-generic statute, and therefore convictions under the Alabama statute (which is indivisible and non-generic) could not qualify as violent felonies under the ACCA.  See 133 S.Ct. 90 (2012).  Of course, the grant of certiorari is not a holding that binds courts, nor does it decide anything other than whether to take a case under consideration.  See, e.g., Schwab v. Sec'y, Dep't of Corr., 507 F.3d 1297, 1298–99 (11th Cir. 2007) (collecting cases); Rutherford v. McDonough, 466 F.3d 970, 977 (11th Cir. 2006).  Second, Howard argued that even if convictions under the Alabama statute could qualify as ACCA predicates, the government had to present evidence proving that three of his earlier convictions did qualify.  He demanded "strict proof" that any of his third-degree burglary convictions qualified as violent felonies under the ACCA.

At the sentence hearing, the government introduced certified copies of three of Howard's earlier convictions:  his conviction for third-degree robbery in 2008 and two of his convictions for third-degree burglary in 2005.[2]  Howard conceded that the third-degree robbery conviction counted as an ACCA predicate, but he contested the use of the two third-degree burglary convictions for ACCA purposes.

---

[2] According to the PSR, Howard had seven convictions for third-degree burglary:  three in 1999 and four in 2005.  The government documented only two of the four from 2005 and none of the three from 1999.

7

All the government presented in response were copies of: (1) the original criminal complaints, signed by detectives, which alleged second-degree burglary; (2) the district attorney's informations, which charged Howard with second-degree burglary and stated that Howard had indicated his desire to plead guilty without an indictment; and (3) the case action summaries, which said that at the plea hearing the State moved to amend the charge to third-degree burglary and Howard "entered a plea of guilty on Solicitor's Information to the amended charge of Burglary Third Degree." The government did not present a copy of any plea agreement or a transcript of the plea colloquy for either of the 2005 third-degree burglary convictions.

The district court rejected both of Howard's rationales for not counting the two burglary convictions. First, it determined that Alabama's third-degree burglary statute was divisible because this Court had applied the modified categorical approach to the same statute in Rainer, 616 F.3d at 1215–16. The court then concluded that the documents the government had submitted, while not ideal, were enough to establish that Howard's two convictions involved the elements for generic burglary under the ACCA and thus qualified as violent felonies. The court reached that conclusion by relying on the original informations in the two cases, which both alleged that Howard had broken into a home. From that allegation the court inferred Howard must have pleaded guilty to breaking into a building in both

8

cases, which meant he had been convicted for crimes that involved the elements of generic burglary.  The district court imposed a sentence of 235 months, which was at the bottom of Howard's guidelines range as enhanced by the ACCA, but above the 210 months top of what the guidelines range would have been but for the ACCA enhancement.

## III. Discussion

Howard challenges his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), on sufficiency of the evidence grounds.  His challenge to his sentence contests the ACCA enhancement.

"We review de novo the sufficiency of the evidence presented at trial, and we will not disturb a guilty verdict unless, given the evidence in the record, no trier of fact could have found guilt beyond a reasonable doubt."  United States v. White, 663 F.3d 1207, 1213 (11th Cir. 2011) (quotation marks omitted).  We also review de novo the district court's determination that Howard's third-degree burglary convictions qualify as violent felonies under the ACCA.  See United States v. James, 430 F.3d 1150, 1153 (11th Cir. 2005).

### A.  The Sufficiency of the Evidence Supporting the Conviction

To justify a conviction for violation of § 922(g)(1), the government must have proved that:  (1) Howard was a convicted felon, (2) he knowingly possessed a firearm, and (3) the firearm was in or affected interstate commerce.  See United

9

States v. Jernigan, 341 F.3d 1273, 1279 (11th Cir. 2003).  Howard stipulated to the convicted felon and interstate commerce elements, leaving whether he knowingly possessed the firearm as the only question.  To prove knowing possession, the government "need only show constructive possession through direct or circumstantial evidence."  United States v. Greer, 440 F.3d 1267, 1271 (11th Cir. 2006).  The evidence proves constructive possession if it shows that the defendant exercised ownership, dominion, or control over the firearm, or that he had the power and intent to exercise dominion or control over it.  Id.

The evidence at trial showed that the firearm was found in the glove compartment of Howard's car along with a copy of his tag receipt, that he had been in the driver's seat just before the search, and that he had a prior conviction for possession of a firearm.  That evidence was sufficient to establish constructive possession of the pistol and convict Howard of the § 922(g)(1) crime.  See United States v. Gonzalez, 71 F.3d 819, 835 (11th Cir. 1996) (the evidence was sufficient to convict under § 922(g)(1) where it showed that the defendant was driving a car "with ready access to the weapon later discovered in the glove compartment"), abrogated on other grounds by Arizona v. Gant, 556 U.S. 332, 335, 129 S.Ct. 1710, 1714 (2009); United States v. Lawing, 703 F.3d 229, 240 (4th Cir. 2012) (same where it showed that the car belonged to the defendant and the shotgun shells at issue were found in the car's glove box along with the defendant's identification

10

card); see also United States v. Gates, 967 F.2d 497, 499 (11th Cir. 1992) (evidence that two pistols were under the driver's seat established that the passenger "had sufficient access to the firearms to establish possession" under 18 U.S.C. § 924(c)).

Howard argues that the jurors should have discredited the officers' testimony that they did not see Cox reach for the glove box (on the ground that the officers were too far away to tell), and that the jurors then should have inferred that Cox put the gun in the glove box. We do not second guess the jury's determination of credibility issues. See United States v. Wright, 392 F.3d 1269, 1273–74 (11th Cir. 2004). Nor will we reverse a conviction simply because the defendant "put forth a reasonable hypothesis of innocence" at trial. United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006). There was plenty of evidence to support the conviction.

## B.  The ACCA Enhancement

Howard contends that the district court erred in imposing the ACCA enhancement. His principal argument is that Alabama's third-degree burglary statute is a non-generic, indivisible statute, and for that reason convictions for violating it can never be ACCA predicates. In the alternative, he argues that the documents the government offered at his sentence hearing did not prove that his prior third-degree burglary convictions qualified as ACCA predicates.

11

A "burglary" that is punishable by more than a year in prison (and third-degree burglary in Alabama is), may qualify as a violent felony under the ACCA. See 18 U.S.C. § 924(e)(2)(B)(ii).  But not just any burglary will do.  The Supreme Court has held that "burglary" under the ACCA is defined using "the generic, contemporary meaning of burglary."  Taylor v. United States, 495 U.S. 575, 598, 110 S.Ct. 2143, 2158 (1990).  The generic, contemporary definition of burglary "contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime."  Id. Federal courts apply this "uniform definition independent of the labels employed by the various States' criminal codes."  Id. at 592, 110 S.Ct. at 2155.

The Supreme Court has developed two methods for determining whether a prior conviction meets the generic definition of burglary:  the categorical approach and the modified categorical approach.  The categorical approach is the more limited approach — "limited" in the sense that courts applying it "must look only to the statutory definitions of the prior offenses . . . and not to the particular facts underlying those convictions."  Taylor, 495 U.S. at 600, 110 S.Ct. at 2159.  The modified categorical approach is less limited, but not unlimited.  See Descamps, 133 S.Ct. at 2283–84.  It allows courts to look beyond the statute itself to a limited class of documents, often called Shepard documents, to determine whether the prior conviction involved a determination that the defendant was guilty of each of

12

the elements of the generic ACCA offense.  Id.; see also Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 1263 (2005) (establishing that courts using the modified categorical approach can examine "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information").

In our pre-Descamps decision in United States v. Rainer, we addressed a defendant's contention that his prior convictions under Alabama's third-degree burglary statute did not qualify as violent felonies under the ACCA.  See 616 F.3d at 1213.  We held that the Alabama statute is non-generic because its definition of "building," which includes things such as vehicles and watercraft, is broader than the scope of generic burglary's "building or structure" element.  Id. at 1215.  As a result, a conviction under the statute could not count as an ACCA predicate using the categorical approach.  We still held that Rainer's third-degree burglary convictions counted as ACCA predicates because, applying the modified categorical approach, we concluded that the indictments in those earlier cases showed that he had been found guilty of all of the elements of generic burglary. Id. at 1215–16.

Like our other pre-Descamps decisions, Rainer assumed that the modified categorical approach could be applied to all non-generic statutes.  See id.  Relying

on language from the Supreme Court's decision in Shepard, we applied the modified categorical approach and examined the indictments that led to Rainer's convictions to see "'if the indictment[s] . . . show[ed] that the defendant was charged only with a burglary of a building.'" Id. at 1216 (quoting Shepard, 544 U.S. at 17, 125 S.Ct. at 1258). One indictment charged Rainer with breaking into a shoe store, and the other charged him with breaking into a gas station. Id. Because both of those structures fell within the generic definition of "building," we concluded that both of Rainer's prior convictions "were for burglary of a building in the generic burglary sense of the word." Id.

Two crucial aspects of our decision in Rainer are no longer tenable after Descamps. The first is the assumption that the modified categorical approach could be applied to any non-generic statute. See id. at 1215–16. The Descamps decision dictates discarding that assumption. It holds that the modified categorical approach can be applied only when dealing with a divisible statute: a statute that "sets out one or more elements of the offense in the alternative." Descamps, 133 S.Ct. at 2281–82.[3]

---

[3] As we hope our decision in this case shows, we scrupulously follow Supreme Court decisions. It is not our role to critique their reasoning or to criticize their holdings, and we do not intend to do so here. To borrow a metaphor in vogue, we don't grade the Justices' papers, they grade ours.

That said, we think it might be helpful, in case the Supreme Court revisits this area — perhaps to decide how the Descamps decision should apply in different circumstances — to point out that one premise of it may be problematic. The opinion in that case comments on the way a crime is charged under a divisible statute, observing that "[a] prosecutor charging a violation of a

---

divisible statute must generally select the relevant element from its list of alternatives." Descamps, 133 S.Ct. at 2290. And the opinion hypothesizes a case in which a statute criminalizes assault with any of eight specified weapons, only one of which qualifies the crime under the ACCA. See id. The opinion says that: "A later sentencing court need only check the charging documents and instructions ('Do they refer to a gun or something else?') to determine whether in convicting a defendant under that divisible statute, the jury necessarily found that he committed the ACCA-qualifying crime." Id.

The problem is that the charging documents and instructions often will not help. To be sure, prosecutors generally cannot charge alternatives in the disjunctive. See The Confiscation Cases, 87 U.S. 92, 104, 20 Wall. 92, 104 (1873) ("[A]n indictment or a criminal information which charges the person accused, in the disjunctive, with being guilty of one or of another of several offences, would be destitute of the necessary certainty, and would be wholly insufficient.") (dicta); United States v. Vann, 660 F.3d 771, 774 n.4 (4th Cir. 2011) (citing The Confiscation Cases for the proposition that "a disjunctive charge in an indictment contravenes an accused's constitutional rights"). Prosecutors can and frequently do, however, charge alternative elements in the conjunctive and prove one or more of them in the disjunctive, which is constitutionally permissible. See, e.g., Crain v. United States, 162 U.S. 625, 636, 16 S.Ct. 952, 955 (1896) ("We perceive no sound reason why the doing of the prohibited thing in each and all of the prohibited modes may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute."); United States v. Miller, 471 U.S. 130, 136, 105 S.Ct. 1811, 1815 (1985) (citing Crain as holding that an "indictment count that alleges in the conjunctive a number of means of committing a crime can support a conviction if any of the alleged means are proved").

A leading treatise acknowledges that some jurisdictions allow prosecutors to charge a defendant in the conjunctive (though the statute is framed in the disjunctive) and prove their case in the disjunctive, see 5 Wayne R. LaFave et al., Criminal Procedure § 19.3(a), at 263 & n.72, 284–85 & n.178 (3d ed. 2007). In fact, every federal circuit allows prosecutors to do that. See, e.g., United States v. Pacchioli, 718 F.3d 1294, 1300–01 (11th Cir. 2013) ("Moreover, although the government charged this crime in the conjunctive, the government needed to prove only, in the disjunctive, one of the three charged acts."); United States v. DeChristopher, 695 F.3d 1082, 1095 (10th Cir. 2012) ("It is hornbook law that a crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive.") (quotation marks omitted); United States v. Coughlin, 610 F.3d 89, 107 n.10 (D.C. Cir. 2010) ("The correct method of pleading alternative means of committing a single crime is to allege the means in the conjunctive.") (quotation marks and alteration omitted); United States v. Mejia, 545 F.3d 179, 207 (2d Cir. 2008) ("Where there are several ways to violate a criminal statute . . . federal pleading requires . . . that an indictment charge [be] in the conjunctive to inform the accused fully of the charges.") (quotation marks omitted); United States v. Cox, 536 F.3d 723, 726 (7th Cir. 2008) ("[W]here a statute defines two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count.") (quotation marks omitted); United States v. McAuliffe, 490 F.3d 526, 534 (6th Cir. 2007) ("It is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively. Upon the trial, the government may prove and the trial judge may instruct in the disjunctive form used in the statute.") (quotation marks omitted); United States v. Roy, 408 F.3d

15

The second part of Rainer that is no longer good law involves its application

of the modified categorical approach.  We applied it in that case by asking whether

the factual allegations of the indictments charged the defendant with an act that fit

under the generic definition of burglary of a building.  See 616 F.3d at 1216.  But

Descamps declared that the modified categorical approach should "focus on the

elements, rather than the facts, of a crime."  133 S.Ct. at 2285.  If the modified

_____

484, 492 n.4 (8th Cir. 2005) ("[W]here a statute specifies two or more ways in which one offense may be committed, all may be alleged in the conjunctive in one count of the indictment, and proof of any one of the methods will sustain a conviction.") (quotation marks omitted); United States v. Garcia-Torres, 341 F.3d 61, 66 (1st Cir. 2003) ("Where a statute . . . sets forth several different means by which an offense may be committed, it is permissible for a count in an indictment to allege all or several of these means in the conjunctive.") (quotation marks omitted); United States v. Booth, 309 F.3d 566, 572 (9th Cir. 2002) ("When a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any one of those conjunctively charged acts may establish guilt."); United States v. Montgomery, 262 F.3d 233, 242 (4th Cir. 2001) ("Where a statute is worded in the disjunctive, federal pleading requires the Government to charge in the conjunctive.") (quotation marks and alteration omitted); United States v. Dickey, 102 F.3d 157, 164 n.8 (5th Cir. 1996) ("[A] disjunctive statute may be pleaded conjunctively and proved disjunctively.") (quotation marks omitted); United States v. Niederberger, 580 F.2d 63, 68 (3d Cir. 1978) ("[I]t is settled law that where a statute denounces an offense disjunctively, the offense may be charged conjunctively in the indictment."); see generally United States v. LaPointe, 690 F.3d 434, 440 (6th Cir. 2012) (explaining that indictments must be brought in the conjunctive to show "that the grand jury has found probable cause for all of the alternative theories that go forward," but that the factfinder "may convict a defendant on any theory contained in the indictment").

As the cited authorities show, prosecutors usually are not required to select from multiple statutory phrases or alternative means a single one to include in an indictment or to prove at trial. When conducting a plea colloquy trial courts do not always focus on a selected phrase or alternative means in the information or indictment when accepting a defendant's guilty plea. Jury instructions often list all of the charged alternatives, and juries are rarely asked to specify in their verdict which of the alternatively charged means they unanimously found beyond a reasonable doubt.

Of course, whether the problematic nature of this one part of the discussion in the Descamps opinion undermines its reasoning is not our decision to make.  The decision in Descamps is the law of the land, which must be and will be followed unless and until the Supreme Court decides it should not be.  Being Supreme, after all, means being supreme.

16

categorical approach does apply to a prior conviction, courts should use the Shepard documents to determine which statutory phrase the defendant was necessarily convicted under and then analyze whether that phrase matches the corresponding element of the generic offense. See id.

Of course, if the statute under which the defendant was previously convicted is indivisible, the modified categorical approach is inapplicable. And if the modified categorical approach is inapplicable, the Shepard documents are irrelevant to the ACCA issue.

### 1. Applying the Descamps Principles to a Specific Case

The first thing we do is examine the statute of conviction using the categorical approach. See Descamps, 133 S.Ct. at 2281. Under that approach we compare only "the elements of the statute forming the basis of the defendant's conviction" and the elements of the generic offense. Id. If the statute criminalizes several acts, we must assume "that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense." Moncrieffe v. Holder, — U.S. —, 133 S.Ct. 1678, 1684 (2013) (quotation marks and alterations omitted). A conviction will qualify as an ACCA predicate under the categorical approach "only if the statute's elements are the same as, or narrower than, those of the generic

17

offense."  Descamps, 133 S.Ct. at 2281.[4]  If the statute is generic — if it requires

that all of the elements of the generic ACCA crime be present before it is violated

— all convictions under the statute necessarily count as ACCA predicates and

there is no need for further analysis.  See id. at 2283; Taylor, 495 U.S. at 599, 110

S.Ct. at 2158.  The modified categorical approach does not come into the picture

when a statute criminalizes only categorically generic crimes; it is not needed.

If the statute is non-generic, we must determine whether it is divisible or

indivisible.  See Descamps, 133 S.Ct. at 2281–82.  As we have already mentioned,

Descamps tells us that a statute is divisible if it "sets out one or more elements of

the offense in the alternative—for example, stating that burglary involves entry

into a building or an automobile."  Id. at 2281.  By contrast, a statute is indivisible

if it contains "a single, indivisible set of elements."  Id. at 2282; see also id. at 2281

(defining an indivisible statute as one "not containing alternative elements").  An

example of an indivisible statute would be one that criminalizes assault "with a

weapon," instead of criminalizing assault "with a gun, a knife, or an explosive."

See id. at 2290.  If a statute is indivisible, a court may not apply the modified

categorical approach, and that is the end of the inquiry; the prior conviction cannot

---

[4] An example of a statute having a narrower element than the generic crime would be a burglary statute that defines burglary as unlawfully entering an "occupied building" as opposed to the broader "building or structure" element that is part of the generic definition.  See Taylor, 495 U.S. at 599, 110 S.Ct. at 2158 ("If the state statute is narrower than the generic view, e.g., in cases of burglary convictions in common-law States or convictions of first-degree or aggravated burglary, there is no problem, because the conviction necessarily implies that the defendant has been found guilty of all the elements of generic burglary.").

qualify as an ACCA predicate regardless of what any Shepard documents may show.  See id. at 2281–82.

Descamps indicates that sentencing courts should usually be able to determine whether a statute is divisible by simply reading its text and asking if its elements or means are "drafted in the alternative."  Id. at 2285 n.2.  Sentencing courts conducting divisibility analysis in this circuit are bound to follow any state court decisions that define or interpret the statute's substantive elements because state law is what the state supreme court says it is.  See United States v. Rosales-Bruno, 676 F.3d 1017, 1021 (11th Cir. 2012) ("[W]e are bound by [state] courts' determination and construction of the substantive elements of [a] state offense.") (citing Johnson v. United States, 559 U.S. 133, 138, 130 S.Ct. 1265, 1269 (2010)); see also Johnson, 559 U.S. at 138, 130 S.Ct. at 1269 ("We are, [when deciding whether a prior conviction is a 'violent felony' under the ACCA], bound by the [state] Supreme Court's interpretation of state law, including its determination of the elements of [the statute of conviction]."); cf. Riley v. Kennedy, 553 U.S. 406, 425, 128 S.Ct. 1970, 1985 (2008) ("[T]he prerogative of the Alabama Supreme Court to say what Alabama law is merits respect in federal forums . . . ."); In re Cassell, 688 F.3d 1291, 1292 (11th Cir. 2012) ("[T]he United States Supreme Court repeatedly has held that state courts are the ultimate expositors of state law.") (quotation marks omitted); Loggins v. Thomas, 654 F.3d 1204, 1228 (11th

19

Cir. 2011) ("Alabama law is what the Alabama courts hold that it is."); <u>Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen</u>, 116 F.3d 1406, 1413 (11th Cir. 1997) ("The final arbiter of state law is the state supreme court, which is another way of saying that Alabama law is what the Alabama Supreme Court says it is."). [5]

Of course, courts are not compelled to apply the modified categorical approach for every divisible statute because with some of them none of the alternatives may match the elements of the generic crime. If that is the case, even though the statute is divisible, the court can and should skip over any <u>Shepard</u> documents and simply declare that the prior conviction is not a predicate offense based on the statute itself. <u>See Descamps</u>, 133 S.Ct. at 2285 (implying that a court need not apply the modified categorical approach if none of the alternatives in the statute of conviction "matches the generic version" of the offense). One reason the Supreme Court adopted the categorical and modified categorical approaches was to conserve judicial resources. <u>See id.</u> at 2289. Courts are free to pursue the most efficient means of deciding a particular case.

---

[5] <u>Descamps</u> left open the question whether sentencing courts deciding divisibility issues should be bound by state court decisions about the elements of a crime. <u>See</u> 133 S.Ct. at 2291. Because the Supreme Court did not decide that question, it is to be answered under our circuit law and the answer is clear. The <u>Descamps</u> decision did nothing to undermine the holding of our <u>Rosales-Bruno</u> decision, which is directly on point and remains binding on us under our prior panel precedent rule. <u>See United States v. Kaley</u>, 579 F.3d 1246, 1255 (11th Cir. 2009) (holding that this Court's precedent is binding under the prior panel precedent rule unless it is contradicted by a "clearly on point" decision from either the Supreme Court or this Court sitting en banc) (quotation marks omitted).

When a court does apply the modified categorical approach, the key is to "focus on the elements, rather than the facts," of the prior conviction. Id. at 2285. The alternative elements in a divisible statute "effectively create[] 'several different . . . crimes.'" Id. (quoting Nijhawan v. Holder, 557 U.S. 29, 41, 129 S.Ct. 2294, 2303 (2009)). And the modified categorical approach gives courts "a way to find out which [of those alternative crimes] the defendant was convicted of." Id. The approach allows a court to consider a limited class of court approved documents, including: "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." Johnson, 559 U.S. at 144, 130 S.Ct. at 1273; see also Shepard, 544 U.S. at 26, 125 S.Ct. at 1263. A court must not, however, consult those documents "to discover what the defendant actually did" and then compare that conduct to the elements of the generic offense. Descamps, 133 S.Ct. at 2287.[6] Instead, the documents must be examined only "to determine which statutory phrase," meaning which alternative element, "was the basis for the conviction." Id. at 2285 (quotation marks omitted). If the Shepard documents

---

[6] That is the mistake we made in Rainer when we simply asked if the defendant's "two previous convictions were for burglary of a building in the generic burglary sense of the word" instead of asking whether that burglary statute required a finding that the defendant was, in effect, guilty of the elements of generic burglary. 616 F.3d at 1216. After Descamps the question is whether the defendant was necessarily found guilty under a phrase or listed element in a divisible statute that matches the corresponding element in the generic offense. See 133 S.Ct. at 2281 (instructing courts to "compare the elements of the crime of conviction (including the alternative element [from the statute] used in the case) with the elements of the generic crime").

21

show that the defendant was found guilty under elements of a divisible statute that match the generic offense, instead of those that do not, the prior conviction is an ACCA predicate.[7]

## 2. The Indivisibility of Alabama's Third-Degree Burglary Statute

We turn now to the question of whether Alabama's third-degree burglary statute is a divisible statute to which sentencing courts can apply the modified categorical approach. The elements of generic burglary under the ACCA are: (1) "an unlawful or unprivileged entry into, or remaining in," (2) "a building or other structure," (3) "with intent to commit a crime." Taylor, 495 U.S. at 598, 110 S.Ct. at 2158. Section 13A-7-7(a) of the Alabama Code provides that "[a] person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." The statute appears to match all three elements of generic burglary. See Rainer, 616 F.3d at 1214. However, the statutory term "building" is defined as follows:

---

[7] We do not understand Descamps to have limited the modified categorical approach so that courts cannot declare a prior conviction to be an ACCA predicate unless the Shepard documents quote the "magic words" from the alternative element of the statute. See Descamps, 133 S.Ct. at 2286 ("[A] court may look to the additional documents to determine which of the statutory offenses (generic or non-generic) formed the basis of the defendant's conviction."). For example, assume that there is a divisible burglary statute with the alternative elements of "a building, a vehicle, or a boat." Building matches the generic element, but vehicle and boat do not. If a defendant pleaded guilty to an indictment charging that the defendant "did knowingly or unlawfully enter the house of a victim with the intent to commit a crime therein," in violation of the hypothetical statute, his conviction would qualify as an ACCA predicate even though the indictment did not quote the relevant statutory phrase "building" (instead of "vehicle" or "boat"). It would qualify because we know that every house is a building, and that satisfies the "building or structure" element of generic burglary.

22

> Any structure which may be entered and utilized by persons for business, public use, lodging or the storage of goods, and such term includes any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein, and such term includes any railroad box car or other rail equipment or trailer or tractor trailer or combination thereof.

Ala. Code § 13A-7-1(2).  A number of those things included in the definition of "building" (such as vehicles and watercraft) fall outside the "building or structure" element of generic burglary, making the burglary statute non-generic.  See Rainer, 616 F.3d at 1215.[8]  So we have to determine if the statute is divisible.

The key to determining divisibility, according to Descamps, is whether the "statute sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile." 133 S.Ct. at 2281; see also id. at 2285 n.2 (indicating that a court may apply the modified categorical approach where the "state law is drafted in the alternative"). Nothing in the Alabama statute suggests its definition of "building" is drafted in the alternative.

Instead, Alabama Code § 13A-7-1(2) provides one definition of building and then includes a non-exhaustive list of things that fall under that definition.  The statute defines "building" as "[a]ny structure which may be entered and utilized by

---

[8] The Rainer decision's holding that Alabama's third-degree burglary statute is non-generic remains good law because Descamps did not change the definition of generic burglary or interpret the text of the Alabama burglary statute.  See Descamps, 133 S.Ct. at 2281–93; see also Kaley, 579 F.3d at 1255 (holding that a prior panel's interpretation remains binding unless a later Supreme Court decision is "clearly on point") (quotation marks omitted).

persons for business, public use, lodging or the storage of goods." Ala. Code § 13A-7-1(2). The statute specifies that the term "structure" in the definition of building "<u>includes</u> any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein," and that the "term <u>includes</u> any railroad box car or other rail equipment or trailer or tractor trailer or combination thereof." <u>Id.</u> (emphasis added). The items that follow each use of the word "includes" in the statute are non-exhaustive examples of items that qualify as a "structure" and thus count as a "building" under Alabama Code § 13A-7-1(2). <u>See</u> <u>Jean v. Nelson</u>, 863 F.2d 759, 777 (11th Cir. 1988) ("[W]here the drafters used the word 'includes' they intended to provide a <u>non-exhaustive</u> list of examples to clarify the meaning of the term.") (quotation marks omitted). The statutory definition of "building" does not say what is not included.

In light of the <u>Descamps</u> decision, illustrative examples are not alternative elements. <u>See</u> <u>United States v. Cabrera-Umanzor</u>, 728 F.3d 347, 353 (4th Cir. 2013) (holding that a statute was indivisible under <u>Descamps</u> where the acts of sexual abuse listed in the statute "[we]re not elements of the offense, but serve[d] only as a non-exhaustive list of various means by which the elements of sexual molestation or sexual exploitation can be committed"). As a result, the statute is non-generic and indivisible, which means that a conviction under Alabama Code § 13A-7-7 cannot qualify as generic burglary under the ACCA. <u>See</u> <u>Descamps</u>,

24

133 S.Ct. at 2292 (explaining that a defendant "is never convicted of the generic crime" where an "overbroad" indivisible statute is involved).[9]

## IV. Conclusion

Howard's conviction is affirmed.  We vacate Howard's sentence and remand for resentencing without the ACCA enhancement.  Howard asks that we limit the scope of resentencing on remand to prevent the government from seeking an enhancement under the ACCA's residual clause.  See 18 U.S.C. § 924(e)(2)(B)(ii) (providing that the ACCA enhancement applies to crimes punishable by more than a year that "involve[] conduct that presents a serious potential risk of physical injury to another").  We have discretion under 28 U.S.C. § 2106 to determine the appropriate scope of proceedings on remand in a criminal case.  See United States v. Martinez, 606 F.3d 1303, 1304–05 (11th Cir. 2010).  The government has not challenged Howard's proposed limitation by requesting an opportunity to prove on remand that his convictions qualify as violent felonies under the ACCA's residual clause.  For that reason, we will exercise our discretion to grant his unopposed request.

On remand, the district court should sentence Howard without the ACCA enhancement, and the government may not argue that any of Howard's prior

---

[9] Because we hold that no conviction under Alabama Code § 13A-7-7 can qualify as an ACCA predicate, we need not review Howard's alternative contention that the documents the government put forward at the sentence hearing failed to establish that his prior burglary convictions qualified as ACCA predicates.

convictions qualify as violent felonies under 18 U.S.C. § 924(e)(2)(B)(ii).  That will not, however, limit the district court's ability to consider the information and evidence from the first sentence hearing, including all of Howard's criminal history and all of his convictions, whether under divisible or indivisible statutes, when it determines an appropriate punishment under the 18 U.S.C. § 3553(a) sentencing factors at the resentencing on remand.  Our circuit law that unobjected to facts in a PSR are taken as true and may be used in determining the appropriate sentence under 18 U.S.C. § 3553 is unaffected by the Descamps decision, except insofar as ACCA sentencing enhancements are concerned.[10]  See, e.g., United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a [PSR] admits those facts for sentencing purposes."); United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004) ("The district court's factual findings for purposes of sentencing may be based on, among other things, . . . undisputed statements in the [PSR]. . . .").

**AFFIRMED in part; VACATED and REMANDED in part.**

---

[10] We express no opinion as to what effect, if any, Descamps has on sentencing courts' ability to rely on unobjected to facts in the PSR when determining whether to impose an ACCA enhancement.