[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13681
Non-Argument Calendar
_____

D.C. Docket No. 8:17-cr-00253-MSS-CPT-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNNIE CHARLES GRIMSLEY, JR.,
a.k.a. Johnny Grimsley,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 6, 2020)

Before JORDAN, BRANCH, and TJOFLAT, Circuit Judges.

PER CURIAM:

Johnnie C. Grimsley, Jr. appeals his convictions for two counts of possessing a firearm and ammunition as a convicted felon.  On appeal, Grimsley argues that the district court erred by instructing the jury on aiding and abetting his codefendant, Timothy Gavin, Jr., in possession of a firearm as a felon because the government did not present evidence that Gavin was a convicted felon.  He also argues that the evidence was insufficient to support his convictions because the government failed to prove that he constructively possessed the firearms and ammunition.  After a review of record, we affirm.

## I. Background

Grimsley was charged with possessing a firearm as a felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(e) (Count Six), and possessing a firearm and ammunition as a felon, also in violation of §§ 922(g)(1), 924(e) (Count Eight).  The indictment also alleged, in those same counts, that Grimsley aided and abetted his co-defendant, Timothy Gavin.[1].  Gavin pleaded guilty, while Grimsley proceeded to trial.

At trial, the government called Carlos Bonilla, an undercover detective with the St. Petersburg, Florida Police Department ("SPPD"), who testified Grimsley was present at two firearm transactions between Bonilla and Gavin.  As an

---

[1]Gavin was charged in all the same counts as Grimsley and was also accused of aiding and abetting Grimsley.  Gavin and another co-defendant not a party to this appeal were charged in the same indictment with several additional counts.

undercover detective, Bonilla recorded both transactions with a hidden camera in his vehicle. The first transaction took place on November 16, 2016 in a Publix parking lot. Grimsley and Gavin arrived in the same car and parked next to Detective Bonilla; Grimsley was driving. Gavin slid a firearm from the backseat of his vehicle into the backseat of Detective Bonilla's vehicle. Gavin then got into the front passenger seat of Detective Bonilla's vehicle, and Grimsley stood near the front of the vehicle. Much of the recorded audio of this first transaction—including Detective Bonilla's conversation with Grimsley—was unclear, so at trial, Detective Bonilla narrated as the video played for the jury. According to Bonilla's testimony, Detective Bonilla asked Gavin where he had gotten the firearm, to which Gavin replied "[f]rom my cousin." Detective Bonilla asked, "you mean him?",[2] to which Gavin replied "yeah." When Bonilla again asked Grimsley who gave them the weapon, Grimsley replied, "from my homeboy." Grimsley also told Detective Bonilla that he could "get [sic] anything he want."

As part of Detective Bonilla's cover, he pretended to be an employer and small business owner. The detective gave job applications for custodial work to both defendants at the first transaction, with the goal of identifying them from the

---

[2] At trial, there was a great deal of controversy over how Detective Bonilla knew Gavin was referring to Grimsley. There was an informant outside of the car, and the detective did not point to Grimsley as he asked the question. However, the detective maintained that he was "referring to" Grimsley.

information they provided.  On cross-examination, Detective Bonilla testified that Grimsley completed the job application Detective Bonilla gave him because he thought he would get a job buffing floors.

The second transaction took place in a motel parking lot on November 22, 2016.  This transaction was also video recorded and played for the jury.  After Detective Bonilla parked, Gavin and Grimsley came down from the third floor of the motel and walked to the passenger side of Detective Bonilla's vehicle.[3]  Gavin got into the front passenger seat of Detective Bonilla's vehicle and Grimsley stood near the rear passenger door.  Gavin had a green bag and a cereal box in his hands. The bag contained shotgun shells and the cereal box held a handgun and handgun ammunition packaged together in a plastic bag.  As payment for the shotgun shells, Gavin told Detective Bonilla "I need $50 to my dog."  Detective Bonilla then turned and looked at Grimsley—who was just outside the car—and asked through the open rear window, "this is yours?" to which Grimsley replied "yeah."  Gavin mumbled a reply and then said "yeah."  Detective Bonilla paid Grimsley $400 for the gun.

After the government rested, Grimsley moved for a directed verdict on both counts.  Grimsley argued the government did not establish Grimsley aided or

---

[3] Detective Bonnilla testified that he saw them "coming down from the third floor of the motel" and "the front door was facing west towards [the] road," but he did not testify that he saw them in the motel room or actually exiting the motel room.

4

abetted Gavin in the possession of a firearm as a felon because it did not present evidence of a conversation between him and Gavin or anything "that says they were working together to sell a firearm." He then argued that the evidence was insufficient to show that he possessed a firearm because he did not have control of the firearm. Grimsley contended that the government only presented evidence that Gavin touched the firearm—not that Grimsley had control of it. The court denied the motion as to the firearms but ruled that there was insufficient evidence for possession of the shotgun shells.

During the charge conference, when the government asked for an aiding and abetting instruction as an alternate theory to the possession counts, the court noted that aiding and abetting had not been pled in the indictment, referring to the lack of citation to 18 U.S.C. § 2. The government responded that the citation was not necessary for the indictment because the indictment included the aiding and abetting language. Defense counsel replied "I disagree, Your Honor. I object to the aiding and abetting. Their position throughout this case—." At that point the court interjected to ask the government, "[d]o you have a case?" The government produced a case that they contended solved the issue and handed it to the judge.[4] The court then overruled the objection to the aiding and abetting instruction.

---

[4] The record does not specify which case was produced.

In charging the jury, the court instructed the jury on possession and, specifically, constructive possession. The court also charged the jury on aiding and abetting as follows:

> A defendant aids and abets a person if the defendant intentionally joins with the person to commit a crime. A defendant is criminally responsible for the acts of another person if the defendant aids and abets the other person. A defendant is also responsible if the defendant willfully directs or authorizes the acts of an agent, employee, or other associate.
>
> But finding that a defendant is criminally responsible for the acts of another person requires proof that the defendant intentionally associated with or participated in the crime, not just proof that the defendant was simply present at the scene of a crime or knew about it. In other words, you must find beyond a reasonable doubt that the defendant was a willful participant and not merely a knowing spectator.

During deliberations, the jury asked the district court "[d]o we have written documentation that Gavin was a convicted felon on 11-16-16?"[5] The government conceded that there was "nothing in evidence" as to Gavin's criminal history. The court told the jury that it "should look to the documentation and evidence in its possession to consider this question."

The jury found Grimsley guilty on both counts. After trial, Grimsley filed a renewed motion for a judgment of acquittal, generally reiterating his arguments

---

[5] This was the date of the first drug transaction.

6

made during trial.  The court denied the motion.  Grimsley timely filed a notice of appeal.

On appeal, Grimsley argues that (1) the district court should not have given the aiding and abetting instruction without any evidence in the record to support it, and (2) there was insufficient evidence presented at trial to convict Grimsley of the § 922(g)(1) count.

## II. Standards of Review

Where a defendant objected to a jury instruction at trial, we review the district court's decision to give that instruction for abuse of discretion.  *United States v. Deverso*, 518 F.3d 1250, 1254 (11th Cir. 2008).  Even if error is found, the harmless error rule applies to incorrect jury instructions.  *See United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012).  "Thus, [we] will not reverse a conviction unless, after examining the entire charge, we find that the issues of law were presented inaccurately, the charge included crimes not contained in the indictment, or the charge improperly guided the jury in such a substantial way as to violate due process."  *United States v. Richardson*, 233 F.3d 1285, 1292 (11th Cir. 2000) (quotation marks omitted).

We review the sufficiency of the evidence *de novo,* "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the verdict."  *United States v. Schier*, 438 F.3d 1104, 1107 (11th Cir.

2006).  The district court's denial of "motions for a judgment of acquittal will be upheld if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000).  We will not reverse a conviction solely because the defendant "put forth a reasonable hypothesis of innocence" at trial, because "the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt." *United States v. Campo*, 840 F.3d 1249, 1258 (11th Cir. 2016).

### III. Discussion

#### A. Aiding and Abetting Jury Instruction

First, as to whether giving the aiding and abetting instruction was an abuse of discretion, we note that where a district court commits "an error of law," the error is "an abuse of discretion per se." *United States v. Peter*, 310 F.3d 709, 711 (11th Cir. 2002).[6]  "The giving of unwarranted jury instructions is error." *Myers v. Day & Zimmermann, Inc.*, 427 F.2d 248, 253 (5th Cir. 1970).  There is error when a factual predicate for a legal theory has not been shown: "it is settled law that it is

---

[6] The government contends that we should review this alleged error under the plain review standard because the defendant did not specifically preserve his objection.  The government argues that while the defendant did object to the instruction, he was objecting on a different basis than the one at issue here.  Defense counsel did object to the instruction but was interrupted by the judge before he could explain his rationale.  Because we find that Grimsley's argument fails even without plain error review, we need not decide if the argument was waived below.

error in the court to give an instruction when there is no evidence in the case to support the theory of fact which it assumes." *Case of Tweed*, 83 U.S. 504, 518 (1872). We have recently stated that "an aiding and abetting instruction is permissible where the evidence presented would support a conviction for that aiding and abetting offense." *United States v. Seabrooks*, 839 F.3d 1326, 1333 (11th Cir. 2016).

In order to sustain an aiding and abetting theory of conviction, which we note was not a separate charge but merely an alternate theory for the possession of a firearm as a felon counts, the government would have needed to show that (1) Gavin committed the crime of possessing a firearm as a convicted felon, and (2) Grimsley helped Gavin. *United States v. Martin*, 747 F.2d 1404, 1407 (11th Cir. 1984) ("One cannot aid or abet himself."). Here, the government concedes that it did not present evidence at trial that Gavin was a convicted felon. For this reason, the aiding and abetting instruction, which indicated that Grimsley could be convicted for aiding and abetting a felon to possess a weapon, was given in error. *See id.* at 1408 (holding aiding and abetting instructions improper when the evidence did not show that the only people the defendant could have aided committed any offense).

However, upon a review of the record, we determine that the inclusion of the aiding and abetting instruction was harmless error in this particular case. We are

guided by Supreme Court precedent, which instructs us that general verdicts supported by one or more alternate theories are to be upheld if the evidence is sufficient as to any of the theories. *Griffin v. United States*, 502 U.S. 46, 49 (1991) (upholding a common law rule that "a general jury verdict was valid so long as it was legally supportable on one of the submitted grounds—even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action). In *Griffin*, the court upheld a general verdict even with insufficient evidence to support one theory of conviction:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law— whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence.

*Griffin*, 502 U.S. at 59. That there was no evidence in the record as to Gavin's criminal history rendered the aiding and abetting theory invalid as a factual matter, not a matter of law. Therefore, the jury was "well equipped" to recognize and analyze the evidence here. The question then becomes whether there was sufficient evidence to convict Grimsley on the alternative theory of constructive possession of the firearm himself. Because we find the evidence sufficient for conviction of possession of the firearm as a convicted felon, as analyzed further

10

below, any error in the aiding and abetting instruction was harmless. *See United States v. Hornaday*, 392 F.3d 1306 (11th Cir. 2004) (holding an erroneous instruction for aiding and abetting was harmless error because the evidence supported the verdict on other grounds).

B. Sufficiency of the Evidence

To prove a violation of § 922(g), the government had to show that (1) the defendant was a convicted felon, (2) the defendant knowingly possessed a firearm, and (3) the firearm was in or affected interstate commerce. *United States v. Jernigan*, 341 F.3d 1273, 1279 (11th Cir. 2003). Grimsley stipulated to the convicted felon and interstate commerce, leaving whether he knowingly possessed the firearm as the only question. The government may prove possession on a theory of constructive possession with direct or circumstantial evidence. *United States v. Howard*, 742 F.3d 1334, 1341 (11th Cir. 2014). "[E]vidence proves constructive possession if it shows that the defendant exercised ownership, dominion, or control over the firearm, or that he had the power and intent to exercise dominion or control over it." *Id.* (finding constructive possession of a firearm found in the glovebox where defendant had been in the driver's seat just before search of vehicle). Similarly, we have held that the location of two pistols under the driver's seat established that the passenger "had sufficient access to the

11

firearms to establish possession." *United States v. Gates*, 967 F.2d 497, 499 (11th Cir. 1992).

There was sufficient evidence that Grimsley constructively possessed the firearms in both transactions when "we view the evidence in the light most favorable to the government," as we must. *Campo*, 840 F.3d at 1258. Both transactions were recorded. Regarding the first transaction, Detective Bonilla testified that Gavin indicated he got the firearm from Grimsley. Grimsley also told the detective that he could "get more." Grimsley's statements evidenced his "power and intent to exercise control over" the firearm by demonstrating his ownership. *Howard*, 742 F.3d at 1341. Further, Grimsley was driving the vehicle that he and Gavin arrived in, which on its own could have supported a conviction for the first transaction. *See id.* As to the second transaction, Grimsley stated that the firearm was his. He accepted the money for the weapon from Detective Bonilla. These facts show that Grimsley asserted dominion and control over the firearm and ammunition by claiming ownership of the firearm and actively engaging in the close of the sale. We also note that Bonilla testified that Grimsley and Gavin walked together from motel to Bonilla's car where the transaction took place. That circumstantial evidence suggests Grimsley was in a hotel room with all the firearms and ammunition. We have previously held that such evidence supports a theory of constructive possession. *See, e.g., United States v. Riggins*,

12

563 F.2d 1264, 1266 (5th Cir. 1977) (constructive possession found for defendant in a hotel room when drug deal was conducted between two others in the adjoining bathroom).

Grimsley argues that the evidence only shows that he was present to fill out a job application. It is true that a reasonable interpretation of the evidence could have been that he was present to fill out a job application and was only a bystander to Gavin's criminal conduct. But the government is not required to exclude every reasonable hypothesis of innocence. *See Campo*, 840 F.3d at 1258. Moreover, there was no evidence presented that Grimsley knew about the job prospect prior to arriving to the scene of the first transaction.

Grimsley also argues that, because there was insufficient evidence to prove he aided and abetted Gavin, his conviction should be set aside. But, as addressed above, this argument is foreclosed by Supreme Court precedent. *Griffin*, 502 U.S. at 59

Viewed in the light most favorable to the government, the evidence was sufficient to convict Grimsley on both counts. Accordingly, we affirm.

**AFFIRMED.**