HULL, Circuit Judge:
Defendant Nathan E. Gundy appeals his conviction and 288-month sentence for being a convicted felon in possession of firearms. The district court determined that Gundy was an armed career criminal under the Armed Career Criminal Act (“ACCA”),, 18 U.S.C. § 924(e), because he had' at least three prior Georgia burglary convictions, each of which qualified as a predicate “violent felony” under the enumerated crimes provision of the ACCA. On appeal, Gundy challenges his designation as an armed career criminal under § 924(e).
After review of the record and with the benefit of oral argument, we affirm Gun-dy’s conviction and sentence.
I. BACKGROUND
In December 2013, a jury found Gundy guilty on one count of being a convicted felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e).
The Presentence Investigation Report (“PSI”) recommended a base offense level of 24, pursuant to U.S.S.G. § 2K2.1. The PSI recommended (1) a 2-level increase under U.S.S.G. § 2K2.1(b)(l)(A) because the offense involved three firearms,[1] (2) a 2-level increase under U.S.S.G. § 2K2.1(b)(4)(A) because the firearms Gundy possessed were stolen, and (3) a 4-level increase under U.S.S.G. § 2K2.1(b)(6)(B) because Gundy possessed the firearms in connection with another felony offense. These increases yielded an adjusted offense level of 32.
Gundy had numerous prior felony convictions, 17 criminal history points, and a criminal history category of VI, even without a § 924(e) enhancement. Gundy’s offense level of 32 and criminal history category of VI would have yielded an advisory guidelines range of 210 to 262 months. Without a § 924(e) enhancement, Gundy’s statutory' maximum penalty would have been 120 months’ imprisonment. See 18 U.S.C. § 924(a)(2).
The PSI, however, reported that Gundy was an armed career criminal under § 924(e) because he was previously convicted of seven burglary offenses in Georgia, namely: (1) a 2001 conviction for one count of burglary, (2) another 2001 conviction for four counts of burglary, each of which occurred on a separate occasion, (3) a 2005 conviction for one count of burglary, and (4) a 2006 conviction for one count of burglary. Gundy had pled guilty to each of those Georgia burglary offenses. The PSI provided that Gundy had other Georgia convictions for forgery, possession of cocaine, possession of marijuana, entering an automobile, and theft by taking.
Due to his status as an armed career criminal under § 924(e), Gundy’s offense level increased from 32 to 34 under U.S.S.G. § 4B1.4(b)(3)(A). With a total offense level of 34 and a criminal history category of VI, Gundy’s advisory guidelines range was 262 to 327 months’ imprisonment.
*1160 Gundy’s status as an armed career criminal under § 924(e) raised his statutory range of imprisonment to 15 years to life, rather than zero to 10 years.
As to the PSI, Gundy objected to the 2-level increase for possessing stolen firearms and the 4-level increase for possessing firearms in connection with another felony. He also objected to his designation as an armed career criminal on the ground that only two of his burglary convictions involved the burglary of a residence. According to Gundy, only “burglary of a residence” qualifies as a “violent felon/’ under the ACCA, and, therefore, he did not have the requisite three violent felony convictions to qualify as an armed career criminal.
At the April 2014 sentencing hearing, the district court overruled Gundy’s objection to the 2-level increase for possessing stolen firearms, but sustained Gundy’s objection to the 4-level increase for possessing the firearms in connection with another felony.
The district court also overruled Gun-dy’s objection to his designation as an armed career criminal. The district court expressly deferred to the reasoning of the probation officer set forth in an addendum to the PSI. In that addendum, the probation officer concluded that Gundy was an armed career criminal because the charging documents in each of Gundy’s burglary convictions “reveal[ed] that each of those offenses [met] the elements of generic burglary (i.e., [Gundy] unlawfully entered a building or structure with the intent to commit a theft”).
Because the district court sustained Gundy’s objection to the 4-level increase, Gundy’s total offense level became 33 under U.S.S.G. § 4B1.4(b). With a total offense level of 33 and a criminal history category of VI, Gundy’s advisory guidelines. range was 235 to 293 months’ imprisonment. After considering the advisory guidelines range and the factors set forth in 18 U.S.C, § 3553(a), the district court sentenced Gundy to 288 months’ imprisonment. Gundy appealed his conviction and sentence.
Gundy makes several arguments challenging the validity of his § 922(g) conviction. After our review of the record, we find that all of Gundy’s arguments are without merit and affirm Gundy’s conviction. The only remaining issue, is a sentencing one—whether the district court erred in concluding that Gundy’s prior Georgia burglary convictions qualified as violent felonies under the ACCA Whether a particular conviction is a violent felony for purposes of the ACCA is a question of law we consider de novo. United States v. Canty, 570 F.3d 1251, 1254 (11th Cir. 2009).
II. THE ACCA
A felon in possession of a firearm who has at least three prior convictions “for a violent felony or a serious drug offense, or both, committed on occasions different from one another,” is subject to an enhanced statutory penalty under the ACCA. 18 U.S.C. § 924(e)(1). The ACCA defines the term “violent felony” as any crime punishable by a term of imprisonment exceeding one year that:
(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
Id. § 924(e)(2)(B). The first prong of this definition is sometimes referred to as the “elements clause,” while the second prong *1161 contains the “enumerated crimes” and, finally, what is commonly called the “residual clause.”[2] United States v. Owens, 672 F.3d 966, 968 (11th Cir. 2012).
This case involves the enumerated crimes clause, which defines “violent felony,” in part, as “burglary, arson, or extortion” and crimes that “involve[] use of explosives.” 18 U.S.C. § 924(e)(2)(B)(ii). In listing these crimes in § 924(e)(2), Congress referred only to the “genéric” versions of those enumerated crimes. See Taylor v. United States, 495 U.S. 575, 598, 110 S.Ct. 2143, 2158, 109 L.Ed.2d 607 (1990). Further, an enumerated crime counts as an ACCA violent felony if its elements are the same as, or narrower than, those of the generic offense. See id. at 599,110 S.Ct. at 2158.
III. DISCUSSION
A. Elemerits-Based Analysis of a Prior Crime
The United States Supreme Court most recently articulated how to interpret and apply the ACCA’s enumerated crimes provision in Mathis v. United States, 579 U.S. -, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016). In Mathis, the Supreme Court recognized that its opinion in Taylor “set out the essential rule governing ACCA cases more than a quarter century ago,” which is that “[a]U that counts under the [ACCA] ... are the elements of the statute of conviction.” Mathis, 579 U.S. at-, 136 S.Ct. at 2251 (quotation marks omitted). “That simple point became a mantra” in the Supreme Court’s subsequent ACCA decisions. Id. Indeed, the Supreme Court in Mathis pointed out that this “essential rule” has governed all of its ACCA decisions since Taylor:
At the risk of repetition (perhaps downright tedium), here are some examples. In Shepard: ACCA “refers to predicate offenses in terms not of prior conduct but of prior ‘convictions’ and the ‘ele-mentes]’ of crimes.” 544 U.S. at 19, 125 S.Ct. 1254 (alteration in original). In James v. United States: “[W]e have avoided any inquiry into the underlying facts of [the defendant’s] particular offense, and have looked solely to the elements of [burglary] as defined by [state] law.” 550 U.S. 192, 214, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007). In Sykes v. United States: “[W]e consider [only] the elements of the offense [,] without inquiring. into the specific conduct of this particular offender.” 564 U.S. 1, 7, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011) (quoting James, 550 U.S. at 202, 127 S.Ct. 1586; emphasis in original). And most recently (and tersely) in Descamps: “The key [under ACCA] is elements, not facts.” 570 U.S., at -, 133 S.Ct. at 2283.
Id. at 2251-52.
Mathis thus drove home the point that focusing on the elements of the statute of conviction is, and always has been, the essential principle governing ACCA cases: “For more than 25 years, we have repeatedly made clear that application of ACCA involves, and involves only, comparing elements.” Id. at 2257.
Mathis also instructs that “[t]he comparison of elements ..is straightforward when a statute sets out a single (or ‘indivisible’) set of elements to define a single crime.” Id. at 2248. Iii such cases, *1162 the court simply “lines up that crime’s elements alongside those of - the generic offense and sees if they match.” Id. This is known as the “categorical approach.” See id. at 2248.
Mathis notes, however, that some criminal statutes do not set out a single crime but “have a more complicated (sometimes called ‘divisible’) structure.” Id. In fact, “[a] single statute may list elements in the alternative, and thereby define multiple crimes.” Id. at 2249. If the statute sets out multiple crimes, it is “divisible.” See id. Faced with a “divisible” statute, courts must identify which crime in the statute formed the basis of the defendant’s conviction. See id. The Mathis Court stressed that “[t]o address that need, this Court approved the ‘modified categorical approach’ for use with statutes having multiple alternative elements.” Id. Under the modified categorical approach, “a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.” Id. Courts must then compare the elements of that identified crime to the elements of the relevant generic offense. See id.
B. Disjunctive Phrasing
Notably, the Supreme Court in Mathis explained more fully how courts should evaluate criminal statutes with “disjunctive phrasing.” Id. at 2249, 2253. Specifically, a state’s criminal statute may use terms like “or” that can signal either (1) the listing of alternative elements, thus creating multiple crimes, or (2) the listing of alternative means of committing a single offense with an indivisible set of elements. See id. at 2249.
If the statute lists alternative “elements,” it is considered “divisible,” and courts may employ the modified categorical approach to determine the elements of the defendant’s conviction. Id. But if a statute merely lists “various factual means” of committing a single offense, then the statute is considered “indivisible,” and that indivisible set of elements will be the basis of the defendant’s conviction. See id. And if that indivisible statute “sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form.” Descamps v. United States, 570 U.S.-,-, 133 S.Ct. 2276, 2283, 186 L.Ed.2d 438 (2013).
In Mathis, the Supreme Court also instructed that “[t]he first task for a sentencing court faced with an alternatively phrased statute is ... to determine whether its listed items are elements or means.” Mathis, 579 U.S. at-, 136 S.Ct. at 2256. This determination—“elements or means?”—is a “threshold inquiry.” Id. Thus, in an enumerated crimes ACCA case involving a statute with disjunctive or alternative phrasing, courts must first determine (1) whether that statutory alternative phrasing lists multiple alternative elements, thereby creating multiple offenses in a divisible statutory structure, or (2) whether that statutory alternative phrasing merely lists various factual means of satisfying one or more of the statute’s otherwise indivisible set of elements.
C. Elements or Means?
More significantly though, the Supreme Court in Mathis added to its ACCA precedent by instructing courts how to discern “elements” from “means.” “Elements are the constituent parts of a crime’s legal definition—the things the prosecution must prove to sustain a conviction.” Id. at 2248 (quotation marks omit *1163 ted). “At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty.” Id. at 2248. Facts and means, on the other hand, “are mere real-world things—extraneous to the crime’s legal requirements.” Id, “They are circumstances or events having no legal 'effect or consequence ... [and] need neither be found by a jury nor admitted by a defendant.” Id. (quotation marks and alterations omitted).
The Supreme Court in Mathis enumerated several tools courts may use to determine whether a statute’s “listed items are elements or means” or, put another way, whether a statute is “divisible.” Id. at 2256. In doing so, the Supreme Court clarified when and how courts may look beyond the language of the statute, and may even go to parts of the state court record, to determine whether a statute lists alternative elements or alternative means. Id. at 2256-57.
As one tool, the Supreme Court explained that “the statute on its face may resolve the'issue.” Id. For example, “[i]f statutory alternatives carry different pun-ishménts, then under Apprendi they must be elements.” Id. “Conversely, if a statutory list is drafted to offer ‘illustrative examples,’ then it includes only a crime’s means of commission.” Id. (citing United States v. Howard, 742 F.3d 1334, 1348 (11th Cir. 2014)). Additionally, “a statute may itself identify. which things must be charged (and so are elements) and which need not be (and so are means).” Id.
As another tool, the Supreme Court stated that in conducting the elements-versus-means inquiry, federal sentencing courts can look to state court decisions interpreting an alternatively phrased statute for guidance. Id. If a precedential state court decision makes clear that a statute’s alternative phrasing simply lists “alternative methods of committing one offense,” such that “a jury need not agree” on which alternative method the defendant committed in order to sustain a conviction, then the statute is not divisible. Id. (quotation marks and alterations omitted). “Armed with such authoritative sources of state law, federal sentencing courts can readily determine the nature of an alternatively phrased list.” Id.
As a third tool, the Supreme Court stated that “if state law fails to provide clear answers, federal judges have another placé to look: the record of a prior conviction itself.” - M. The Supreme Court explained that this “peek” at the record documents “is for the sole and limited purpose of determining whether the listed items are elements of the offense,” Id at 2256-57 (quotation marks and alterations omitted). This is a “peek” to answer the threshold means-or-elements question (i.e. the divisibility issue) and is not the full-blown modified categorical approach.
In explaining this “peek,” the Supreme Court in Mathis said, (1) “Descamps previously recognized just this way of discerning whether a statutory list contains means or elements,” and (2)- that the Des-camps Court “noted that indictments, jury instructions, plea colloquies and plea agreements will often reflect the crime’s elements and so can reveal—in some cases better than state law itself—whether a statutory list is of elements or means.” Id. at 2257 n.7 (quotation marks omitted). The Supreme Court then instructed: “Accordingly, when state law does not resolve the means-or-elements question, courts should resort to the record documents for help in making that determination.” Id. (quotation marks and alterations omitted).
Most helpfully though, the Supreme Court in Mathis gave contrasting examples *1164 of how to implement this third tool for answering the elements-versus-means inquiry. In its first example, the Supreme Court noted that “an indictment and correlative jury instructions [could] charge a defendant with burgling a ‘building, structure, or vehicle.’” Id. Those documents might also use “a single umbrella term like ‘premises.’ ” Id. Either situation “is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt.” Id. Moreover, in each situation, “the record would ... reveal what the prosecutor has to (and does not have to) demonstrate to prevail.” Id. In a contrasting example, the Supreme Court noted that “[cjonversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.” Id. Again, this “peek” at the record is for answering the means-or-elements question, also called the divisibility question.
Finally, the Supreme Court acknowledged that “such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able .to satisfy Taylor’s demand for certainty when determining whether a defendant was. convicted of a generic offense.” Id (quotation marks omitted). However, the Supreme Court concluded that “between those documents and state law, that kind of indeterminacy should prove more the exception than the rule.” Id. This makes good sense because state court indictments often will chargé only one of the alternative terms, thereby indicating that a statute is divisible.
We now apply the principles and tools outlined in Mathis to this case.
D. Georgia’s Burglary Statute is Broader than Generic Burglary
We first identify the elements of generic burglary. The generic, contemporary definition of burglary consists of these elements: (1) an unlawful or unprivileged entry into, or remaining in, (2) a building or other structure, (3) with intent to commit a crime therein. See Howard, 742 F.3d at 1342; Mathis, 579 U.S. at-, 136 S.Ct. at 2248.
Next, we examine whether Georgia’s burglary statute has these elements. At the time of Gundy’s seven prior felony burglary offenses in 2001, 2005, and 2006, Georgia’s burglary statute provided as follows:
A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof.
Ga. Code Ann. § 16-7-l(a) (2011).[3] Section 16-7-1 criminalizes the following conduct: (1) entry into a dwelling house, a building, or other structures (2) “without authority,” and (3) with “intent to commit a felony or theft therein.” Id. Section 16-7-1 thus criminalizes conduct that would satisfy all the elements of a generic burglary.
*1165 However, at the time-of Gundy’s prior convictions, § 16-7-1'also criminalized conduct broader than the ACCA’s generic definition of burglary. Specifically, § 16-7-1 encompassed not only unlawful entry into buildings or other structures, but also into vehicles, railroad cars, watercraft, or aircraft. See United States v. Bennett, 472 F.3d 825, 832 (11th Cir. 2006); see also Howard, 742 F.3d at 1342. Thus, § 16-7-1 is non-generic. See Bennett, 472 F.3d at 832.
The- salient question, then, is whether § 16-7-1’s alternative phrasing of the locational element—(1) dwelling house, or (2) building, vehicle, railroad car, watercraft, or other such structure designed for use as a dwelling, or (3) any other building, railroad car, aircraft, or any room or any part thereof—lists multiple alternative locational “elements” or various “means” of satisfying a single, indivisible set of elements.
Before examining the Georgia burglary statute, it is also helpful to review the Iowa burglary statute discussed in Mathis and the Alabama burglary statute discussed in Howard.
E. Iowa and Alabama Burglary Statutes
At issue in Mathis was the Iowa Code, which defines burglary in § 713.1 as “[a]ny person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege, to do so, enters an occupied structure.” Iowa Code § 713.1 (emphasis added). The Iowa statute employs a “single locational element,” which is “occupied structure.” Mathis, 579 U.S. at -, 136 S.Ct. at 2250; Iowa Code § 713.1.
Then, in a separate statute, § 702.12, the Iowa Code defines the term “occupied structure” as “any building, structure, appurtenances .to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons.” Iowa Code § 702.12.
In Mathis, the Supréme Court concluded that the Iowa burglary statute in § 713.1 defined “one crime, with one set of elements” with a single locational element of “occupied structure.” Mathis, 579 U.S. at -, 136 S.Ct. at 2250. The Supreme Court explained that the listed locations in the separate § 702.12 definition were not “alternative elements” but were “alternative ways of satisfying the single locational element” in § 713.1. Id. In addition to the clear statutory text of a single locational element in § 713.1, the Supreme Court also pointed out that the Iowa Supreme Court had held that the alternative premises in the § 702.12 definition were “alternative method[s]” of committing the" offense, “so that'the jury need hot agree” whether the burgled location was a building, other structure, or vehicle. Id. (citing State v. Duncan, 312 N.W.2d 519, 532 (Iowa 1981)).
Similarly, in Howard, the Alabama statute that created the crime of burglary used a single locational element of “building.”[4] Section 13A-7-7 provides that “[a] person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.” Ala. Code § 13A-7-7(a) (2014) (emphasis added).
Then, in a separate statute in § 13A-7-1(2), the Alabama Code defines the term “building” as “[a]ny structure which may be entered and utilized by persons for business, public use, lodging or the storage *1166 of goods, and such term includes any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein, and such term includes any railroad box car or other rail equipment or trailer or tractor trailer or combination thereof.” Id. § 13A-7-l(2) (2014) (emphasis added).
In Howard, this Court explained why the Alabama burglary statute was not divisible. The Alabama statute did not “set[ ] out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile.” Howard, 742 F.3d at 1348. “Instead, Alabama Code § 13A-7-l(2) provides one definition of building and then includes a non-exhaustive list of things that fall under that definition.” Id. In Howard, this Court further pointed out that the word “includes” in § 13A-7-l(2) showed that the drafters “intended to provide a non-exhaustive list of examples to clarify the meaning of the term.” Id. (quoting Jean v. Nelson, 863 F.2d 759, 777 (11th Cir. 1988)).[5]
F. Georgia’s Burglary Statute
We now turn to the text of Georgia’s burglary statute. “[SJentencing courts should usually be able to determine whether a statute is divisible by simply reading its text_” Howard, 742 F.3d at 1346.
In contrast to Iowa’s statute in Mathis and the Alabama statute in Howard, the text of the Georgia burglary statute in § 16-7-1, that creates the crime, does not use a single locational element (like “occupied structure” or “building”). The Georgia law also does not contain a definition elsewhere that provides a non-exhaustive laundry list of other places or locations. The Georgia statute also does not use the term “includes.”
Rather, the Georgia burglary statute, that creates the crime of burglary, uses alternative locational elements. Section 16-7-1 provides that “[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within”:
the dwelling house of another or
any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or
within any other building, railroad car, aircraft, or any room or any part thereof.
*1167 Ga. Code Ann. § 16-7-l(a) (2011) (emphasis added).[6] Rather than a single locational element, the plain text of the Georgia statute has three subsets of different locational elements, stated in the alternative and in the disjunctive. Each of the three subsets enumerates a finite list of specific structures in which the unlawful entry must occur to constitute the crime of burglary. In doing so, the burglary statute has multiple locational elements effectively creating several different crimes. See Descamps, 570 U.S. at-, 133 S.Ct. at 2281 (explaining that an example of a divisible statute is one “stating that burglary involves entry into a building or an automobile”).
This is why under Georgia law a prosecutor must select, identify, and charge the specific place or location that was burgled. For example, the Georgia Court of Appeals has held that a burglary indictment must charge the particular place or premises burgled and the specific location of that place or premises. See Morris v. State, 166 Ga.App. 137, 303 S.E.2d 492, 494 (1983) (stating that “where the defendant is charged with burglary, the indictment must specify the location of the burglary” and concluding that the indictment was sufficient where it charged a “building,” identified as “the Financial Aid Office and Alumni Office, located at Fort Valley State College, Fort Valley, Peach County, Georgia”); State v. Ramos, 145 Ga.App. 301, 243 S.E.2d 693, 693 (1978) (stating it is not necessary to prove “the specific place” to obtain a theft-by-taking conviction, but it is necessary to prove the “specific location” to obtain a burglary conviction); State v. Green, 135 Ga.App. 622, 218 S.E.2d 456, 457 (1975); Chester v. State, 110 Ga.App. 733, 140 S.E.2d 52, 53 (1964) (“It must be alleged and proved in an indictment for burglary that there was a breaking and entering of one of the classes of buildings set out in the statute.”); Kidd v. State, 39 Ga.App. 30, 146 S.E. 35, 35 (1928) (holding that the indictment was sufficient where it identified the location burgled as the protected structure of “railroad cars”).
The U.S. Supreme Court has told us that “[a] prosecutor charginjg a violation of a divisible statute must generally select the relevant element from the list of alternatives.” Descamps, 570 U.S. at-, 133 S.Ct. at 2290. That the Georgia prosecutor must select and identify the locational element of the. place' burgled—whether the place burgled’ was a dwelling, building, railroad car, vehicle, or watercraft—is the hallmark of a divisible statute. Indeed, in every case cited by Gundy and the government, the indictment specified the type of place or premises burgled. See, e.g., Weeks v. State, 274 Ga.App. 122, 616 S.E.2d 852 (2005) (a “dwelling house”); Davis v. State, 308 Ga.App. 7, 706 S.E.2d 710, 714 (2011) (a “dwelling house”); Smarr v. State, 317 Ga.App. 584, 732 S.E.2d 110, 114-15 (2012) (a “building” that served as a gas station); Morris, 303 S.E.2d at 494 (a “building” used as a “Financial Aid Office and Alumni Office”).
That the prosecutor must select and identify the relevant statutory locational element is well illustrated by the Georgia court’s decision in DeFrancis v. Manning, 246 Ga. 307, 271 S.E.2d 209 (1980). As quoted above, one of the alternative locational elements in the Georgia statute is a “vehicle ... designed for use as the dwelling of another.” Ga. Code Ann. § 16-7-l(a) *1168 (2011). The indictment in DeFrancis charged that, the defendant “unlawfully without authority and with intent to commit a theft therein entered that certain vehicle, same being a gray Ford truck, being the property of and owned by McKesson Wine and Spirits Company, a division of Foremost-McKesson, Inc., said truck being located on 10th Avenue West in the City of Cordele, Crisp County, Georgia, at the time of said entry therein by the said accused.” 246 Ga. at 307, 271 S.E.2d 209. The Georgia Supreme Court set aside the defendant’s burglary conviction because the indictment.did not charge that the vehicle was “designed for use as a dwelling.” Id. at 308, 271 S.E.2d 209. The Georgia Supreme Court held, “that the vehicle was designed as a dwelling was an essential element of the offense. which must be alleged.” H. (emphasis added). The fact that under Georgia law the indictment must charge the type of place or location with such specificity further demonstrates that § 16-7-1’s statutory listing of alternative locations for committing a burglary constitutes an enumeration of alternative elements.
. For all of the above reasons, we conclude that the alternative locational elements in the Georgia statute-are divisible. See United States v. Martinez-Garcia, 625 F.3d 196, 198 (5th Cir. 2010) (concluding that the Georgia burglary statute in § 16-7-1 (a) is divisible and that the defendant’s Georgia conviction for burglary of a dwelling house was a crime ,of violence under U.S.S.G. § 2L1.2).[7]
G. The Elements of Gundy’s Prior Burglary Convictions are Generic .
Our final task is to determine which of the alternative elements in Georgia’s burglary statute formed the basis of Gundy’s prior burglary convictions and whether those elements match the generic definition of burglary. Having concluded that Georgia’s burglary statute is divisible, we may use the modified categorical approach. Mathis, 579 U.S. at-, 136 S.Ct. at 2249. Under that approach, we look to “a limited class of documents (for example, the indictment, jury instructions or plea agreement and colloquy) to determine what crime, with what, elements, a defendant was convicted of.” Id. These are known as Shepard documents. Id,; Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 1263, 161 L.Ed.2d 205 (2005).
The indictment for each one of Gundy’s prior Georgia burglary convictions charged the type of place and the address of each burgled location.[8] Two indictments charged that Gundy unlawfully, and with the intent "to commit theft therein, entered a “dwelling house”; (1) “the dwelling house of another, to wit: Chiffon Jones, located at 403 Grand Street; Sandersville, Georgia;” and (2) “the dwelling house of another, to wit: McArthur Jordan, located at 321 Ty- *1169 bee Street, Sandersville, Georgia.” Two other indictments charged that Gundy “unlawfully, without authority, and with intent to commit a theft therein” entered a “business house” described as: (1) “the business house, of another, to. wit: David Bernice Hartley d/b/a E-Z Coin Laundry, located at East McCarty Street, , Sandersville, Georgia;”[9] and (2) “the business house of another, to wit: Bill Murphy d/b/a Murphy & Palmer Feed & Seed Company, located at 232 North Smith Street, Sandersville, Georgia.” Thus', all of the burgled locations were either dwelling houses or buildings housing a business, which are generic burglaries. Importantly, none were vehicle's, railroad cars,' watercrafts, or aircrafts, which are not generic burglaries.[10]
Accordingly, Gundy’s state court indictments make clear that Gundy’s Georgia burglary convictions involved these three elements: (1) an unlawful entry (2) into a dwelling house or building (3) with intent to commit a crime therein. See Ga. Code Ann. § 16-7-l(a) (2011). These elements substantially conform to the generic definition of burglary. See Howard, 742 F.3d at 1342. Therefore, Gundy’s’ prior Georgia burglary convictions qualify as violent felonies under the ACCA’s enumerated crimes clause. The district court did not err in sentencing Gundy as an armed career criminal.
H. Dissent’s Discussion of Divisibility
The dissent' relies heavily on Lloyd v. State, 168 Ga.App. 5, 308 S.E.2d 25 (1983), but that case had nothing to do with the locational element, which the Georgia Supreme Court in DeFrancis told us is an “essential element.” 246 Ga. at 308, 271 S.E.2d 209. The sole issue in Lloyd, was whether the evidence was sufficient to prove “lack of authority on the defendant’s part to enter -the building.” Lloyd, 308 S.E.2d at 25. The officer testified that “[t]he front door of the warehouse had been pried open.” I& The Lloyd court stated: “there are two essential elements which must be established by the State: 1) lack of authority to enter the dwelling or building; 2) intent to commit .a felony or theft.” Id. (emphasis added). The Lloyd court concluded that the evidence in the officer’s testimony “was sufficient to show the defendant’s lack of authority to enter the building.” Id. at 26. When placed in context, the two-element statement in Lloyd is about two elements of “lack of authority to enter” and “intent.” See id. at 25. There was no issue in Lloyd about the location burgled or the essential locational element required under the Georgia statute.
Rather, the Georgia Supreme Court in DeFrancis tells us that the location burgled is a third “essential element” and that the locational element must be identified and charged with particularity in the indictment. See 246 Ga. at 308, 271 S.E.2d 209.
In any event, as to its divisibility analysis, the dissent acknowledges that “if state *1170 law fails to provide clear answers [about a statute’s divisibility], federal judges have another place to look: the record of a prior conviction itself.” If nothing else, perhaps the discussions in the majority opinion and the dissent arguably suggest that Georgia law may not be as clear as either concludes. So if the Georgia law is not clear as to elements or means, what happens next? We agree with the dissent’s divisibility analysis that the next step would be Mathis’s “peek at the record.” The dissent, in its divisibility analysis, peeks at the record and points out that two indictments specified a “dwelling house” and three specified a “business house.” Where we differ is this. Those terms do 'not “speak plainly” enough for tiie dissent. We, however, conclude that the terms “dwelling house” and “business house” satisfy Taylor’s demand for certainty that Gundy’s convictions were for burglary of a building or other structure, which is a generic burglary.
III. CONCLUSION
In light of the foregoing, we affirm Gun-dy’s conviction and sentence.
AFFIRMED.

. The three firearms were; (1) an FÍE, Model E22, .22 caliber pistol, (2) a Smith and Wesson, Model 36, .38 caliber revolver, and (3) a Jimenez, Model J.A. Nine, 9mm caliber pistol.

. On June 26, 2015, the United States Supreme Court held that the residual clause of the ACCA is unconstitutionally vague. Johnson v. United States, 576 U.S. -, -, -, 135. S.Ct. 2551, 2557-58, 2563, 192 L.Ed.2d 569 (2015). Accordingly, we do not consider whether Gundy’s Georgia burglary convictions would alternatively qualify as violent felonies under the residual clause.

. Georgia’s burglary statute was amended on July 1, 2012, and had not been amended prior to that since 1980. See 2012 Ga. Laws 899; 1980 Ga. Laws 770. Accordingly, the 2011 version of Ga. Code Ann. § 16-7-1 was the statute under which Gundy was previously convicted.'

. In 2015, Alabama changed the wording of the burglary statute in § 13A-7-7. 20Í5 Ala. Laws Act 2015-185. Then in 2016, the state also amended the definitional provision in § 13A-7-1. 2016 Ala. Laws '2016-402. Howard, which was decided in 2014, construed the pre-2015 versions of these-provisions.

. Similar to the Iowa and Alabama statutes, the South Carolina Code uses a single locational element. The South Carolina statute that creates the crime is § 16-11-312(A), which provides that "[a] person is guilty of burglary in the second degree if the person enters a dwelling without consent and with intent to commit a crime therein.” S.C. Code Ann. § 16-11-312(A) (emphasis added).
South Carolina then has two other separate statutes that define “dwelling” and "dwelling house.” In a separate statute, § 16-11-310, the South Carolina Code defines “dwelling,” stating that “ ‘[d]welling’ means its definition found in Section 16-11-10 and also means the living quarters of a building which is used or normally used for sleeping, living, or lodging by a person.” Id. § 16-11-310. In turn, § 16-11-10 provided that "a dwelling house, any house, outhouse, apartment, building, erection, shed or box in which there sleeps a proprietor, tenant, watchman, clerk, laborer or person who lodges there with a view to the protection of property shall be deemed a dwelling house.” Id § 16-11-10. Additionally, the word “building,” as used in § 16-11-310, “means any structure, vehicle, watercraft, or aircraft.” Id § 16-11-310(1). Georgia’s burglary statute is not at all like South Carolina’s. See United States v. Lockett, 810 F.3d 1262 (11th Cir. 2016) (outlining this complex statute and holding that the South Carolina burglary statute is not divisible).

. This was the text of the Georgia burglary statute from 1980 to 2011. Prior to 1968, the burglary statute also had this provision, which is no longer in the statute: "All outhouses contiguous to or within the curtilage or protection of the mansion or dwelling-house, sháll be considered as part of the same.” Compare Ga. Code 1933, § 26-2401 with Ga. Laws 1968, § 26-2401, p. 1249.

.' The dissent has found and cites Mobley v. State. 164 Ga.App. 154, 296 S.E.2d 617, 618 (1982) (describing where the burglary occurred as the “Social Circle Drug Store, the property of Billy Snipes, located in the City of Social Circle, Walton County, Georgia”) (emphasis added). The dissent faults our analysis because this decision did not use the word "building.” We are confident that the term “drug store” sensibly means a building, not a vehicle, railroad car, or watercraft. While one could theoretically operate a drug store out of a vehicle, we are not required to engage in such farfetched hypotheticals, especially given DeFrancis and other Georgia decisions discussed above. If anything, the Mobley decision supports our conclusion that the prosecutor must charge and identify as an element the type of place that was burgled and its location.

. Certified copies of all of Gundy’s state court indictments and Gundy’s guilty pleas thereto are in the record and are attached as an appendix to this opinion.

. Two other indictments charged that Gundy burgled this same E-Z Coin Laundry on East McCarty Street in Sandersville, Georgia but on separate occasions during the year 2000: July 12; August 23; December 12; and December 14. The December 12 and December 14 incidents were charged as two separate counts of burglary in the same indictment. All told, Gundy was charged with and pled guilty to seven separate burgláries in six different indictments.

. While the dissent focuses on jury instructions, Gundy did not proceed to trial but pled guilty. Here, we rely on the indictments, not pattern jury instructions never given. Indeed, the Supreme Court has told us that, in cases where the defendant pled guilty, we can look at the "closest analogs to the jury instructions,” and that they are the indictments or charging information. Shepard, 544 U.S. at 20, 125 S.Ct. at 1259; see also Taylor, 495 U.S. at 602, 110 S.Ct. at 2160.