ROSENBAUM, Circuit Judge, dissenting:
I agree with the panel that Fla. Stat. § 784.03 is divisible into two separate offenses-one of which qualifies as a violent felony for purposes of the sentencing guidelines (the "bodily-harm" provision)[1] and one of which does not (the "touch-or-strike" provision)[2] . I also agree that the fact that Clifford Gandy Jr.'s plea was one of nolo contendere does not change the analysis in this case and that the district court was entitled to look to the arrest report to determine the offense of conviction because the report was incorporated by reference into Gandy's sentence recommendation "as a factual basis."
But I dissent from the panel's application of the modified categorical approach.
*1344 The panel incorrectly applies the modified categorical approach, creating a circuit split in the process. As a result, the panel mistakenly concludes that Gandy's prior conviction for violating § 784.03 was "necessarily" for bodily-harm battery. Since a correct application of the modified categorical approach does not allow us to identify which offense defined in § 784.03 Gandy was "necessarily" convicted of committing, I would vacate the sentence and remand for resentencing.
I.
I begin by reviewing the categorical and modified categorical analyses.
As the "first step" of determining whether a defendant's prior conviction qualifies as a "crime of violence" under the Sentencing Guidelines, we apply the categorical approach set forth in Taylor v. United States , 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). United States v. Estrella , 758 F.3d 1239, 1244 (11th Cir. 2014). Using that method, we "look no further than the statute and judgment of conviction" and ask whether, "on its face," the statute of conviction "requires the government to establish, beyond a reasonable doubt and without exception, an element involving the use, attempted use, or threatened use of physical force against a person for every charge brought under the statute." Estrella , 758 F.3d at 1244 ; accord United States v. Howard , 742 F.3d 1334, 1345 (11th Cir. 2014) ; Donawa v. United States Attorney General , 735 F.3d 1275, 1281 (11th Cir. 2013). If so, then the conviction "necessarily ," Estrella , 758 F.3d at 1245 (citation and quotation marks omitted), indicates that the defendant committed an element that involves the "use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a).
Here, the categorical approach does not reveal whether Gandy was "necessarily" convicted of a crime that includes as an element the "use, attempted use, or threatened use of physical force against the person of another." As the panel accurately points out, Gandy's judgment reveals only that he was convicted of violating Fla. Stat. § 784.03, which is not categorically a crime of violence. Rather, § 784.03 has two subsections possibly applicable here-one that is not categorically a crime of violence ( § 784.03(1)(a)(1), which makes it a crime to "[a]ctually and intentionally touch[ ] or strike[ ] another person against the will of the other"), Curtis Johnson v. United States , 559 U.S. 133, 139, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010), and one that is ( § 784.03(1)(a)(2), which makes it a crime to "[i]ntentionally cause[ ] bodily harm to another person"). Because § 784.03 is divisible into one crime that qualifies as a crime of violence and another that does not, the categorical approach cannot help us deduce whether Gandy's conviction under § 784.03 was necessarily for a crime of violence.
We therefore must turn to the modified categorical approach to help us identify, if possible, whether Gandy was convicted of the touch-or-strike provision or the bodily-harm provision. Estrella , 758 F.3d at 1245. Under the modified categorical approach, we "look to the fact of conviction and the statutory definition of the prior offense, as well as any charging paper and jury instructions" to shed light on what specific offense of a divisible statute the defendant was convicted of. Id. (citation and quotation marks omitted). The documents we use for this purpose are often referred to as " Shepard " documents. See Shepard v. United States , 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).
Critically, and as the Supreme Court has repeatedly emphasized, courts may use the *1345 modified categorical approach to determine only " 'which statutory phrase was the basis for the conviction .' " Descamps v. United States , 570 U.S. 254, 263, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013) (emphasis added) (quoting Curtis Johnson , 559 U.S. at 144, 130 S.Ct. 1265 ); see also Taylor , 495 U.S. at 602, 110 S.Ct. 2143 ; Shepard , 544 U.S. at 26, 125 S.Ct. 1254. We have previously followed this directive when holding that courts may use Shepard documents for only the limited purpose of determining " 'what crime, with what elements, a defendant was convicted of.' " United States v. Gundy , 842 F.3d 1156, 1168 (11th Cir. 2016) (emphasis added) (quoting Mathis v. United States , --- U.S. ----, 136 S.Ct. 2243, 2245, 195 L.Ed.2d 604 (2016) ). It naturally follows that a court "must not ... consult those documents 'to discover what the defendant actually did.' " Howard , 742 F.3d at 1347 (quoting Descamps , 570 U.S. at 268, 133 S.Ct. 2276 ).
Significantly, the modified categorical approach "preserves the categorical approach's basic method," Descamps , 570 U.S. at 263, 133 S.Ct. 2276, since the sentencing court ultimately asks whether the records of the defendant's prior case show that, though convicted of a divisible statute, he was "necessarily convicted " of a particular provision within that divisible statute that is a crime of violence. Choizilme v. United States Attorney General , 886 F.3d 1016, 1023 (11th Cir. 2018) (emphasis added) (citing Mathis , 136 S.Ct. at 2249 ). So we have held that the modified categorical approach requires us to first determine " 'which statutory phrase the defendant was necessarily convicted under,' " and if we can do so, to then ask whether that statutory provision defined a crime of violence, using the categorical approach. United States v. Davis , 875 F.3d 592, 598 (11th Cir. 2017) (emphasis added) (quoting Howard , 742 F.3d at 1345 ).
On the record here, as shown in the next section, the Shepard documents do not allow us to conclude that Gandy was "necessarily convicted under" a particular statutory phrase within § 784.03. For that reason, the panel opinion's determination that Gandy was "necessarily convicted" of bodily-harm battery is incorrect.
II.
In concluding Gandy was "necessarily convicted" of bodily-harm battery and affirming Gandy's sentence, the panel relies on the arrest report in two ways that the modified categorical approach does not permit, even though the report was incorporated "as a factual basis" for the plea. First, the panel opinion appears to contend that where, as here, the factual basis for an offense satisfies the elements of both a qualifying offense and a non-qualifying offense, the district court is entitled to conclude that the defendant was "necessarily" convicted of the qualifying offense. Maj Op. at 1341. And second, the panel opinion seems to conclude that the officer's legal conclusion that Gandy committed bodily-harm battery, which appears in the arrest report, means that Gandy was "necessarily" convicted of that offense.[3] Maj. Op. at 1340-41.
The panel opinion's first apparent contention contravenes the Supreme Court's "demand for certainty" in determining a *1346 defendant's prior offense of conviction. Shepard , 544 U.S. at 21, 125 S.Ct. 1254. It also conflicts with the Eighth Circuit's well-reasoned decision in United States v. Horse Looking , 828 F.3d 744 (8th Cir. 2016), creating a circuit split on that issue. And its second apparent contention is inconsistent with fundamental principles of criminal procedure.
A.
I begin with the panel opinion's apparent contention that, since the factual basis for Gandy's plea would have satisfied the elements of both bodily-harm battery and touch-or-strike battery, the district court was entitled to conclude that Gandy's conviction must have been for bodily-harm battery. We have not previously considered whether a factual basis that satisfies the elements of two crimes-one that qualifies as a crime of violence and one that does not-suffices to show that a defendant charged in the alternative with both crimes was "necessarily" convicted of the qualifying crime. But the Eighth Circuit has. And in United States v. Horse Looking , 828 F.3d 744 (8th Cir. 2016), a well-reasoned opinion in a case materially indistinguishable from the one here, that court found that such a factual basis does not-the opposite of today's panel opinion's conclusion.
In Horse Looking , the defendant was charged with possessing a firearm after having been previously convicted of a "misdemeanor crime of domestic violence." The applicable statute, in turn, defines that term as a crime that, as relevant here, has as an element "the use or attempted use of physical force, or the threatened use of a deadly weapon." 828 F.3d at 746 ; see 18 U.S.C. §§ 921(a)(33)(A)(ii), 922(g)(9). On appeal to the Eighth Circuit, Horse Looking argued that the court should vacate his conviction and dismiss the indictment because the predicate conviction in his case, which was for South Dakota simple assault domestic violence, was not a "misdemeanor crime of domestic violence" as defined by federal law. Horse Looking , 828 F.3d at 746.
As it turned out, the South Dakota simple-assault-domestic-violence statute contained five divisible provisions, and Horse Looking was charged with three of them. Id . As relevant here, Horse Looking's underlying South Dakota indictment alleged that Horse Looking "(4) [a]ttempt[ed] by physical menace or credible threat to put another in fear of imminent bodily harm, with or without the actual ability to harm the other person," or "(5) [i]ntentionally cause[d] bodily injury to another which does not result in serious bodily injury." Id. ; see S.D. Codified Laws § 22-18-1. Before the Eighth Circuit, the parties agreed that a conviction under subsection (5) of the South Dakota statute met the federal definition of a "misdemeanor crime of domestic violence" and that a conviction under subsection (4) did not. Id. at 747.
Applying the modified categorical approach, the court looked to the South Dakota charging and sentencing documents to determine whether Horse Looking had been convicted of subsection (4) or (5), or both. Id. at 747. But those documents revealed only a conviction for violating the statute as a whole, without identifying any particular subsection of conviction. Id.
Continuing with the modified categorical approach, the Eighth Circuit next examined the plea colloquy in Horse Looking's South Dakota case. In that colloquy, Horse Looking had said that he and his wife "got into an argument and she became physical and she cut me and I pushed her."
*1347 Id. at 748. Horse Looking further explained that when he "pushed" his wife, "she fell down." Id. Finally, Horse Looking's attorney volunteered that Horse Looking's wife had "testified that she had some abrasions on her ankle or knee." Id.
Based on this factual recitation, the Eighth Circuit concluded that the colloquy "establishe[d] that Horse Looking could have been convicted under subsection (5)," which was a misdemeanor crime of domestic violence. Id. at 748 (emphasis in original). "But," the court continued, "the colloquy does not exclude the possibility that Horse Looking was convicted under subsection (4)," which was not a misdemeanor crime of violence. Id. at 748. And since the court also could not "say that convictions under the two alternatives are mutually exclusive," it acknowledged it could not determine that the factual basis for Horse Looking's plea necessarily excluded one of the subsections of the statute as the offense of his conviction. Id.
So the court concluded that "the judicial record d[id] not establish that Horse Looking necessarily was convicted of" the qualifying part of the South Dakota statute. Id. at 749. Ultimately, then, because "the state court did not specify which alternative was the basis for conviction ," the Eighth Circuit determined that the government could not establish that Horse Looking had been convicted of a "misdemeanor crime of domestic violence." Id. (emphasis added). That Horse Looking "could have " been convicted of a qualifying offense, the court said, did not meet the Supreme Court's repeated " 'demand for certainty' " when it came to determining whether a defendant had, in fact, been previously convicted of a qualifying predicate offense. Id. at 748-49 (quoting Mathis , 136 S.Ct. at 2256-57 ; citing Descamps , 570 U.S. at 272, 133 S.Ct. 2276 ; Shepard , 544 U.S. at 21, 125 S.Ct. 1254 ; Taylor , 495 U.S. at 602, 110 S.Ct. 2143 ).
Gandy's case presents the same problem, and we should have resolved it in the same way. Here, as in Horse Looking , the judgment and sentencing documents indicate that Gandy was convicted of a general offense, without specifying which particular subsection of that general offense is the offense of conviction. And like Horse Looking, Gandy pled guilty to a charging instrument that contained both qualifying and non-qualifying offenses. Also like Horse Looking, Gandy admitted to conduct that satisfied the elements of both the qualifying offense and the non-qualifying offense. Neither the South Dakota court in Horse Looking's case nor the Florida court in Gandy's case specified whether the defendant's case was for the qualifying subsection or the non-qualifying subsection. And finally, just as was the case with the factual recitation in Horse Looking , the statement of Gandy's actions contained in the arrest report does not exclude the possibility that Gandy committed one of the two crimes ultimately charged in the alternative. So like the Eighth Circuit, we should have concluded that Gandy's past conviction was not "necessarily" for a qualifying offense.
Indeed, the Eighth Circuit did exactly what Supreme Court precedent requires in applying the modified categorical approach. Unfortunately, though, today we do not.[4] And as a result, we arrive at the incorrect answer and create a circuit split in the process.
*1348 B.
Nor, as the panel opinion seems to suggest, can we find the answer to our dilemma by relying on the officer's arrest-report legal conclusion that Gandy committed bodily-harm battery, which he offered to identify his legal authority to make the arrest. It's not that we can't consult the arrest report to help us ascertain the factual basis for Gandy's crime of conviction; we can, since Gandy agreed that the arrest report provided a "factual basis" for his plea. But to paraphrase Inigo Montoya in The Princess Bride , I do not think the presence of the officer's statement in the arrest report means what the panel opinion thinks it means.[5] See Mandy Patinkin: Inigo Montoya , IMDb.com, https://www.imdb.com/title/tt0093779/characters/nm0001597 (last visited Mar. 5, 2019). This is so for two independent reasons: (1) an officer's statement in his arrest report providing a legal conclusion of the offense for which he is arresting a person is not a part of the "factual basis" demonstrating that the defendant, in fact, pled guilty to that particular crime, even when the arrest report is adopted "as a factual basis" for the guilty plea; and (2) only the court, not the arresting officer, has the power to adjudicate a defendant convicted of a crime.
To explain why, I review the purpose of the arresting officer's report in the context of the plea proceeding in Gandy's Florida case. The arresting officer's report was incorporated by reference to the sentence recommendation only "as a factual basis" for Gandy's plea. And the report contained both statements of fact-reporting the actions Gandy took that resulted in his arrest-and the officer's statement of the crime he decided to arrest Gandy for-bodily-harm battery. But the arresting officer's statement of the crime he arrested Gandy for was not a part of the "factual basis" for Gandy's plea. Rather, it served only the purpose of identifying the crime for which the officer arrested Gandy.
To understand the impact of the arrest report's limited purpose, we must consider the role of the "factual basis." Florida Rule of Criminal Procedure 3.170 requires a court to determine that, among other things, a "factual basis for the plea" exists before the court may accept a plea. Satisfying this requirement demands the court "ensure that the facts of the case fit the offense with which the defendant is charged." Williams v. State , 316 So.2d 267, 271 (Fla. 1975). So merely repeating that the defendant committed a particular crime or saying that the defendant committed a specific element of a given crime does not accomplish this task. Rather, the "factual basis" must provide the "factual information necessary to establish the elements of the offense." Id. at 273.
In applying these concepts, we start with "the offense with which [Gandy] [was] charged." Id. at 271. Here, Gandy was charged in the alternative with having committed bodily-harm battery or touch-or-strike battery.
Two elements compose touch-or-strike battery: "(1) actually and intentionally *1349 touching or striking another person; and (2) [doing so] against the will of the other person." Khianthalat v. State , 974 So.2d 359, 361 (Fla. 2008). Among others, the following facts from the arrest report established the two elements of touch-or-strike battery: a video recording showed that Gandy "walk[ed] up behind [the victim] and unprovokedly struck [the victim] in the face which caused [the victim] to fall down to the ground. [Gandy] then continued to strike [the victim] multiple times in the head." The report further memorialized the victim's statement that he "wished to pursue criminal charges" against Gandy.
As for bodily-harm battery, a single element-that the defendant "intentionally caused bodily harm" to the victim-comprises that crime. See Fla. Jury Instruction 8.3 Battery. And along with the arrest report's recounting of the specific injuries the victim incurred as a result of Gandy's actions, the same facts from the arrest report that showed Gandy undertook actions that meet the elements of touch-or-strike battery likewise demonstrated that Gandy engaged in actions that check off bodily-harm battery's single element.
So the facts in the arrest report establishing that Gandy undertook actions that specifically satisfied the elements of each charged crime comprise the "factual basis" for Gandy's plea; they showed the particular actions Gandy committed that supported the conclusions that he "actually and intentionally touch[ed] or str[uck] another person," "against the will of the other person" and that he "intentionally caused bodily harm" to the victim. They did not simply restate an element of a particular crime or the crime for which Gandy was arrested.
By contrast, the officer's legal conclusion that Gandy intentionally caused bodily harm to another did no more than restate a crime. It did not "provide the factual information necessary to establish the elements of the offense." Williams , 316 So.2d at 273. And since it did not do so, it did not serve as part of the factual basis for Gandy's plea.
Nor do the Florida cases cited in the panel's decision support its position that legal conclusions may properly be part of the factual basis for a Florida guilty plea. See Maj. Op. at 1341 (citing Johnson v. State , 22 So.3d 840 (Fla. Dist. Ct. App. 2009) ; Toson v. State , 864 So.2d 552 (Fla. Dist. Ct. App. 2004) ; Hayden v. State , 833 So.2d 275 (Fla. Dist. Ct. App. 2002) ). Critically, the sufficiency of the factual bases for the guilty pleas of the defendants in those cases was not at issue.[6] So those cases can shed no light on whether legal *1350 conclusions constitute part of the "factual basis" for a defendant's guilty plea. Cf. United States v. L. A. Tucker Truck Lines, Inc. , 344 U.S. 33, 37-38, 73 S.Ct. 67, 97 L.Ed. 54 (1952) (noting that where a particular issue was neither raised in the briefs or argument nor discussed in the opinion of the Court, the case could not serve as binding precedent on the particular point).
United States v. Almazan-Becerra , 537 F.3d 1094 (9th Cir. 2008) (" Almazan-Becerra II "), similarly does not help the panel opinion, as the panel's reliance on it rests on another Inigo Montoya type of misunderstanding. The panel cites Almazan-Becerra for the notion that "a defendant's agreement to a police report as a factual basis includes his agreement to the report's description of the offense," by which the panel opinion means the arresting officer's statement of the offense for which the defendant is arrested. Maj. Op. at 1341-42. But Almazan-Becerra did not use the word "describe" in the way that the panel opinion seems to think it did. Rather, it used that word to refer collectively to the specific facts concerning Almazan-Becerra's actions that the reports at issue in that case documented.
In Almazan-Becerra , the federal court had to determine whether Almazan-Becerra had previously been convicted of a drug-trafficking crime to ascertain whether a sentencing enhancement applied to him. See Almazan-Becerra , 537 F.3d at 1095. The state complaint to which Almazan-Becerra had pled guilty, as relevant here, charged in the alternative sale or transport of marijuana, under the same general statute. See United States v. Almazan-Becerra , 482 F.3d 1085, 1089 (9th Cir. 2007) (" Almazan-Becerra I "). Sale of marijuana was a drug-trafficking offense, while transport was not. See Almazan-Becerra II , 537 F.3d at 1099.
But since Almazan-Becerra stipulated as a factual basis for his plea to the police reports concerning his arrest, the court considered the contents of the reports to see whether they could resolve whether Almazan-Becerra had been convicted of sale or transport of marijuana. Id. at 1099 & 1099 n.2. In so doing, it said that "the police reports unequivocally describe Almazan-Becerra's offensive conduct as selling marijuana ...." Id. at 1099. But the court simultaneously expressly "reject[ed]" Almazan-Becerra's contention that the police reports also "describe[d] the offense of transporting marijuana ... because the reports state that the police found a bindle of marijuana on the ground where Almazan-Becerra had previously been walking." Id. at 1099 n.2 (emphasis added). Rather, the court explained, "[W]hen read as a whole, [the reports] describe only one type of offense-selling marijuana. The bindle found on the ground was simply one of several pieces of evidence of that offense." Id. (emphasis added).
So contrary to the panel opinion's suggestion, the Ninth Circuit's explanation for why the reports could not also "describe the offense of transporting marijuana" shows that it did not employ that phrase to refer to an officer's statement of the offense for which he arrested the defendant, but rather to the defendant's specific actions documented in the reports. See id. at 1099 n.2. Put another way, the Ninth Circuit effectively determined that the particular actions memorialized in the police reports could, in good faith, support only the charge of sale.
But even not considering the principle that an officer's statement identifying the *1351 crime for which he arrests a person cannot constitute a part of the "factual basis," a second reason also compels the determination that we cannot view the arresting officer's legal conclusion as dispositive. While the arresting officer may have accurately stated the crime for which he arrested Gandy, the officer was not responsible for Gandy's prosecution. That was up to the State Attorney. See Fla. Stat. § 932.47. It was the State Attorney who selected the charge against him. See id. And once the State Attorney charged Gandy, only the court could adjudicate Gandy guilty of that charge. Fla. R. Crim. P. 3.170.
The following hypothetical illustrates this point more bluntly:
Suppose that the victim in Gandy's case tragically suffered permanent brain damage when Gandy hit him. Florida courts have held such an injury constitutes "great bodily harm," an element of aggravated battery. Fla. Stat. § 784.045 ; see Montero v. State , 225 So.3d 340, 343 (Fla. Dist. Ct. App. 2017). Under our hypothetical, suppose the officer arrested Gandy for aggravated battery, opining in his arrest report that Gandy "did commit the offense of Aggravated Battery Causing Great Bodily Harm, as follows," before setting forth the specific facts supporting Gandy's arrest for that crime. Then suppose that the prosecutor decided to charge only touch-or-strike battery or bodily-harm battery under Fla. Stat. § 784.03 -just like here-and she did not charge aggravated battery, in violation of Fla. Stat. § 784.045. Finally, suppose that, just like here, Gandy pled guilty to the charged crime and that the court adjudicated him guilty of it.
Under the circumstances of that hypothetical, could a later sentencing court correctly surmise that Gandy's conviction was "necessarily" for aggravated battery?
Inconceivable![7]
The officer's statement that Gandy committed the crime for which he was arrested could not define the offense of conviction . Only the court could do that because only the court had the power to adjudicate Gandy guilty and enter a judgment of conviction on the charge. Under this hypothetical scenario, the court identified Fla. Stat. § 784.03 -not Fla. Stat. § 784.045 -as the statute of conviction. And the factual basis for Gandy's plea, with its limited purpose, could not alter the court's judgment and somehow render Gandy convicted of § 784.045, even though the court relied on the arresting officer's report as a factual basis for Gandy's plea. So even assuming that the officer's opinion were a part of the factual basis for Gandy's plea, it could not have shed any light on which offense the Florida court convicted Gandy of.
That principle-that the court, not the arresting officer, adjudicates guilt-applies equally to the case before us. The officer's conclusion that Gandy committed bodily-harm battery, and his decision to arrest him on that basis, cannot demonstrate that the Florida court convicted Gandy of that particular offense. Only the Florida court had the authority to determine the crime of Gandy's conviction. And here, we cannot ascertain the crime for which the Florida court convicted Gandy, since the information charged two crimes in the alternative, the factual basis for the plea satisfied the elements of both offenses, and the Florida *1352 court's judgment reflected only that Gandy was convicted of the general crime of battery under § 784.03.
To find otherwise would undermine the role of the Florida courts in adjudicating defendants guilty of Florida crimes. Only the Florida court can determine the offense of conviction. But the panel opinion's reliance, for the purpose of identifying Gandy's crime of conviction, on the arresting officer's legal conclusion that Gandy committed the offense of bodily-harm battery steals that role from the Florida court and gives it to the arresting officer. That is not something we should be doing.
We are concerned only with what the Florida court convicted Gandy of. And on this record, we are bound to conclude that the Florida court did not "necessarily" convict him of a crime of violence. While it may be tempting to jump to the conclusion that Gandy was convicted of bodily-harm battery based on the officer's legal conclusion in his report, we are not authorized to modify a Florida court's judgment of conviction.
III.
For these reasons, I respectfully dissent. In my view, when we apply the modified categorical approach, Gandy's prior conviction for violating Fla. Stat. § 784.03 does not qualify as a crime of violence, so the district court incorrectly sentenced him as a career offender.

The panel opinion concludes that bodily-harm battery is "necessarily" a crime of violence, though it notes that "under Florida law, bodily harm is broadly defined to encompass any 'slight, trivial, or moderate harm' to a victim." Maj. Op. at 1340. I agree that the injuries described in the two panel-opinion-cited Florida cases interpreting this definition-bruises in one and scratches, swelling, and puncture marks in the other-required the "use ... of physical force" as anticipated by the Supreme Court's interpretation of the elements clause. What is not clear to me after reviewing Florida law is the bottom end of the spectrum of "bodily injury"-that is, what is the most "trivial" or "slight" impact that still counts as "harm" so that it satisfies the definition of "bodily injury"? But because I conclude that we cannot "necessarily" determine that the Florida court convicted Gandy of bodily-harm battery, anyway, I do not opine on whether bodily-harm battery is categorically a crime of violence. My dissent therefore assumes without deciding that it is.

The panel opinion does not decide whether touch-or-strike battery is itself divisible. Under the methodology of Mathis v. United States , --- U.S. ----, 136 S.Ct. 2243, 2256-57, 195 L.Ed.2d 604 (2016), however, touch-or-strike battery is not divisible. Touching and striking constitute alternative means-not alternative elements-of the crime. Under Mathis , we may ascertain whether striking and touching are alternative elements or alternative means by looking to Florida law identifying the elements of Fla. Stat. § 784.03(1)(a)(1). See Mathis , 136 S.Ct. at 2256. In Khianthalat v. State , 974 So.2d 359, 361 (Fla. 2008), the Florida Supreme Court set forth the elements of simple battery under § 784.03(a)(1)(a) as "(1) actually and intentionally touching or striking another person; and (2) [doing so] against the will of the other person." Florida's jury instructions for this crime likewise require the jury to determine whether each of these elements has been satisfied. See Fla. Jury Instruction 8.3 Battery. Because "touching" and "striking" are listed in the alternative as part of a single element of the crime, they constitute alternative means-not alternative elements-under Mathis . See Mathis , 136 S.Ct. at 2256-57. As a result, touch-or-strike battery is not divisible.

The officer's actual statement was "Gandy ... did knowingly and intentionally commit the offense of Battery Causing Bodily Harm, as follows," which preceded a description of the particular facts demonstrating that Gandy's actions, in fact, satisfied the element of that crime.

I can appreciate the Eighth Circuit's concern that the "absence of definitive records frustrates the application of the modified categorical approach." Id. at 749. But as the Eighth Circuit nonetheless correctly observed, "the Supreme Court has made clear that the vagaries of state court recordkeeping do not justify a different analysis." Id. (citing Johnson , 559 U.S. at 145, 130 S.Ct. 1265 ; Shepard , 544 U.S. at 22-23, 125 S.Ct. 1254 ).

Montoya's actual quotation, which he offers in response to the character Vizzini's repeated invocation of the word "inconceivable," is "You keep using that word. I do not think it means what you think it means." Mandy Patinkin: Inigo Montoya , IMDb.com, https://www.imdb.com/title/tt0093779/characters/nm0001597 (last visited Mar. 5, 2019).

Rather, in Johnson , the appellant sought to withdraw her guilty plea because she claimed that she did not understand the consequences of the plea agreement and that she was coerced into pleading guilty. See 22 So.3d at 843. And in Toson , the appellant raised the legal argument that it was fundamental error for him to have been convicted of both dealing in stolen property and grand theft where the conduct involved the stealing of the same property during the same scheme or course of conduct, since Fla. Stat. § 812.025"expressly prohibits a trial court from adjudicating a defendant guilty of theft and dealing in stolen property in connection with one scheme or course of conduct." 864 So.2d at 555. Finally, in Hayden , the appellant asserted that the state trial court erred in sentencing him to a ten-year minimum mandatory term under Fla. Stat. § 775.087(2)(a)(i) because the State's charging document failed to allege that he personally possessed a firearm during the commission of the felony, and Florida courts have held that the State must plead and prove that the defendant had actual physical possession of the firearm during the commission of the felony before the court can impose the § 775.087(2) minimum mandatory sentence. 833 So.2d at 277. In short, none of these appeals in any way challenged the sufficiency of the factual bases supporting the underlying guilty pleas.

To be clear, "inconceivable" means exactly what I think it means: "Impossible to comprehend or grasp fully," or, "[s]o unlikely or surprising as to have been thought impossible; unbelievable." Inconceivable , The American Heritage Dictionary (5th ed. 2011).